# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3686

_____

|  |  |  |
|---|---|---|
| Nitro Distributing, Inc.; West Palm Convention Services, Inc.; Netco, Inc.; Schmitz & Associates, Inc.; U-Can-II, Inc., | * * * * * |  |
| Plaintiffs - Appellees, | * * | Appeal from the United States |
| v. | * * | District Court for the Western District of Missouri. |
| Alticor, Inc., a foreign corporation; Amway Corporation, a foreign corporation; Quixtar, Inc., a foreign corporation, | * * * * * |  |
| Defendants - Appellants. | * |  |

_____

Submitted: May 15, 2006
Filed: July 11, 2006

_____

Before WOLLMAN, BRIGHT, and RILEY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Alticor, Inc., Amway Corporation, and Quixtar, Inc. (collectively "Amway") appeal the district court's[1] order denying their Motion to Dismiss, or in the Alternative,

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

to Stay the Case and Compel Arbitration.  On appeal, they argue (1) the district court erred in determining that Amway's arbitration agreement does not bind the plaintiffs, and (2) the district court erred in determining that the arbitration agreement was procedurally and substantively unconscionable.  We affirm the district court on the first point on appeal and do not reach the second point.

*Background*

The five plaintiffs in this case are motivational tools businesses associated with the Amway trade.  Amway, a multinational company with sales in excess of $5 billion, sells a wide variety of products ranging from kitchen cleaner to jewelry to, in some countries, coffee and milk.  Because Amway has a unique business model, an overview of its practices helps understand this case.  Amway distributes its products via a "network marketing" method.  Under this method, a potential distributor must be sponsored into the company before he or she may sell Amway products.  The sponsor, the sponsor's sponsor, and so on, are the "upline" for the new distributor.  Amway encourages distributors to establish a "downline" by sponsoring other distributors, and it awards bonuses based on the volume of both the distributors' sales and the sales of their downline.  Amway calls this system the "products business".

Sponsors use motivational tools like tapes, lectures, and rallies to recruit new distributors and to encourage their downlines to sell as many products as possible.  The "tools business" arose to meet the demand for motivational tools.  Amway's rules prohibit a distributor from also operating a motivational tools business, which would compete with Amway's own tools business.  Distributors therefore create separate entities to run these businesses.

The plaintiffs in this case are tools businesses, each of which is owned by a distributor who also operates an Amway products business.  With the exception of Netco, none of the tools businesses has ever signed an arbitration agreement with

Amway, although each is owned by a distributor whose products business has signed such an agreement. Amway seeks to bind the tools businesses to the arbitration agreements signed by the products businesses.

The plaintiffs sued Amway in district court. The district court refused to enforce Amway's arbitration agreement and stayed further proceedings pending appeal. First, the district court determined that the arbitration agreements did not bind the tools businesses because the tools businesses neither signed the agreements nor acted as agents of the products businesses that did sign. Additionally, the district court determined that, even if the tools businesses were subject to the arbitration agreements, the agreements were unenforceable because they were unconscionable. The district court noted that the arbitration agreement contained a severability clause that would sever any illegal portions of the agreement without rendering the entire agreement invalid. The court stated that, if the arbitration agreement did bind the plaintiffs, the parties would be required to find a neutral arbitrator in order for the contract to be enforceable.

Amway now appeals the district court's ruling.

*Discussion*

This court reviews de novo arbitration issues based on contract determination. Keymer v. Management Recruiters, Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999). To the extent that the district court based its order on factual findings, we review using the clearly erroneous standard. Id.

In its first point on appeal, Amway asserts the district court erred in determining that the arbitration agreements did not bind the plaintiffs. According to Amway, the agreements bound the plaintiffs either on the basis of estoppel, agency, or the

interlocking dependency between Amway, the products businesses, and the tools businesses.

Amway first argues the plaintiffs should be bound on the basis of estoppel. Amway asserts that "a nonsignatory may be bound to an arbitration agreement (a) when it receives a direct benefit from the contract containing the arbitration provision, or (b) by maintaining its entitlement to rights or benefits under the contract." According to Amway, the plaintiffs receive a direct benefit from the contract because they benefit in general from the Amway network and because their related distributorships conduct their business in accordance with the Amway Rules of Conduct, specifically Amway Rule 4.14.

However, benefitting in general from the Amway network is not the same as directly benefitting from the Amway Rules of Conduct. The direct benefit of an Amway distributorship agreement is the right to sell Amway products and services and to recruit others to do the same. The tools businesses perform entirely different functions. In addition, because Amway does not allow its distributors to also operate tools businesses, Amway's Rules of Conduct, including Rule 4.14, by definition apply to only those in the products business. As Amway itself stated in a letter to one of the plaintiffs, disputes involving tools businesses "do not appear to be covered by our Rules of Conduct or by [the plaintiff's] Amway distributor contract." Accordingly, any benefit the tools businesses derive from the Amway Rules is, at best, indirect and insufficient to support estoppel.

Amway also incorrectly argues that the arbitration agreement should bind the plaintiffs because the plaintiffs maintain their entitlement to rights or benefits under the Amway Rules of Conduct. The plaintiff tool companies do not assert that they are entitled to any rights or benefits under the Amway Rules. Their lawsuit does not allege any violations of that contract. In addition, as both parties admit, the Amway rules do not cover tools businesses, so the plaintiffs by definition could not benefit or

-4-

derive rights from them.  Cf. Dominium Austin Partners, LLC v. Emerson, 248 F.3d 720, 728 (8th Cir. 2001) (binding nonsignatory parties to a partnership agreement where those parties had made allegations in a class action lawsuit that treated all parties as signatories and were based in part on the partnership agreement).

Next, Amway argues that the plaintiffs are bound by the arbitration agreement because they are agents of the products businesses.  An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound.  Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,7 F.3d 1110, 1121 (3d Cir. 1993).  Amway, however, has failed to show that the tools businesses are agents for those companies because it has not demonstrated that they had actual or apparent authority to act on behalf of the products businesses.  Amway cannot plausibly assert that it reasonably believed the tools businesses had the authority of an agent when Amway's own Rules of Conduct mandate the two types of businesses remain separate and unconnected entities.

Third, Amway asserts that the plaintiffs may be compelled to arbitrate under the "community of interest" doctrine, because the interests of the plaintiffs are directly related to Amway's interests and only by ordering arbitration may evisceration of the underlying arbitration agreement be avoided.  The cases Amway cites in support of this proposition, however, relate to situations where a *nonsignatory* attempts to bind a *signatory* to an arbitration agreement.  Pritzker, 7 F.3d 1110; CD Partners, LLC v. Grizzle, 424 F.3d 795 (8th Cir. 2005).

In this case, the inverse is true: Amway, the signatory, is attempting to bind the nonsignatory plaintiffs to the arbitration agreement.  Although Amway maintains this is a nondistinction, the Second Circuit noted in Thomson-CSF, S.A. v. American Arbitration Ass'n that the nature of arbitration makes the distinction important: "Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." 64 F.3d 773, 779 (2d Cir.

1995).  Because the plaintiffs never indicated a willingness to arbitrate with Amway, the estoppel cases cited by Amway are "inapposite and insufficient justification" for binding the plaintiffs to an agreement they never signed.  Id.; See also Keymer, 169 F.3d at 504 ("[A]rbitration is a matter of consent, not of coercion.")

The parties disagree on whether one of the plaintiffs, Netco, actually signed Amway's arbitration agreement.  Charlie and Kimberly Schmitz own Netco.  In 1984, before Netco came into existence, Charlie Schmitz signed an application to become an Amway distributor.  In 1985, he signed a form allowing Amway to automatically renew each year his distributorship.  In 1990, Charlie and Kimberly incorporated Netco, and Netco began operating as both a distributorship and a tools business in 1991.  The Netco corporate application did not contain an arbitration agreement, but it did state that Netco would comply with the Amway Rules of Conduct.  Amway automatically renewed Netco's distributorship each year, apparently based on Schmitz's 1985 automatic renewal document.  In 1998, Amway unilaterally amended its Rules of Conduct to include an agreement to arbitrate.  By 1999, Netco was no longer operating as either an Amway distributorship or an Amway tools business.

Under these facts, we cannot say that Netco agreed to be bound by the agreement to arbitrate.  We have emphasized that arbitration is a matter of contract. See Keymer, 169 F.3d at 504.  Netco never signed Amway's arbitration agreement. At best, it merely ratified for one year Rules of Conduct that, by Amway's own admission, applied solely to products businesses.  In this lawsuit involving tools businesses, Netco is not bound by Amway's arbitration agreement.

In its second point on appeal, Amway asserts the district court erred in determining that its arbitration agreement was both procedurally and substantively

unconscionable.  We need not reach this argument for we hold that the plaintiffs are not bound by Amway's arbitration agreement.

       Accordingly, we affirm.

_____