# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 4, 2011

No. 09-11000

Lyle W. Cayce
Clerk

DK JOINT VENTURE 1; DK JOINT VENTURE 2; VANDALAI, L.L.C., and/or LLLP; PARLAI, INC., and/or LLLP; JEFF WEEKS; KCR INVESTMENTS, INC.; RICHARD BUSH; RTB HOLDINGS, L.P., and/or Ltd.,

Plaintiffs - Appellees

v.

RICHARD W. WEYAND; PETER THIESSEN,

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This is an appeal from a district court's order confirming an arbitration award. The plaintiffs-appellees are six business entities which claim to have been defrauded by the defendant-appellants, Richard Weyand and Peter Thiessen. Weyand and Thiessen were respectively the chief executive officer (CEO) and chief financial officer (CFO) of several corporations, which are hereinafter referred to as the defendant corporations. The plaintiffs and the defendant corporations entered into certain contracts which contained arbitration agreements. The plaintiffs initiated arbitration proceedings against the defendant corporations and also against Weyand and Thiessen as

No. 09-11000

individuals. Weyand and Thiessen protested that they had not agreed to arbitrate anything. Nevertheless, an arbitration panel rendered an award of damages and attorneys' fees against, inter alia, Weyand and Thiessen. The plaintiffs then filed a motion for confirmation of the arbitration award in federal district court. Weyand and Thiessen argued that the arbitration panel had exceeded its jurisdiction by rendering an award against them, because they had never consented to arbitration. However, the district court issued an order confirming the arbitration award. We reverse the district court's order because under ordinary principles of contract and agency law, Weyand and Thiessen were not personally bound by the arbitration agreements that their corporations entered into, and therefore the arbitration panel lacked jurisdiction to render an award against them.

## BACKGROUND

The underlying proceedings are complex, but the facts that are relevant to this appeal are as follows. The plaintiffs-appellees are business entities named DK Joint Venture 1, DK Joint Venture 2, Vandalai L.L.L., Parlai L.L.L., KCR Investments, Inc., and RTB Holdings, Ltd. In 2007, the plaintiffs filed arbitration demands with the Dallas office of the American Arbitration Association. They alleged that the defendants — including Weyand, Thiessen, fifteen corporations controlled by them, and two other individuals who are not relevant to this appeal — had committed fraud, breach of contract, breaches of fiduciary duty, and other wrongs in order to induce the plaintiffs to invest money in a purported oil and gas venture. Weyand and Thiessen are the only defendants who are parties to this appeal. In seeking arbitration, the plaintiffs relied on arbitration provisions that were

2

No. 09-11000

contained in contracts (called Subscription Agreements) between the plaintiffs and some of the defendant corporations.[1]

Next, the plaintiffs filed two petitions in Texas state courts, making the same allegations and seeking to compel all the defendants to arbitrate the dispute. While these two actions were pending before the state courts, 19 investors (18 individuals and one corporation) intervened in one of the actions, asserting the same claims and allegations that the original plaintiffs had asserted.

The defendants removed the two state-court suits to the United States District Court for the Northern District of Texas. The federal district court consolidated the actions into one. On January 29, 2008, the district court issued an order which, as relevant here, held that all the defendants (including Weyand and Thiessen) were bound by the arbitration agreements. The district court's order "administratively closed" the case "pending the conclusion of the arbitration proceedings."

The arbitration proceedings took place before a panel of three arbitrators appointed by the American Arbitration Association.[2] The

---

[1] The arbitration provisions, which were all the same, read as follows:
**Arbitration.** Any controversy, dispute or disagreement arising out of or relating to this Agreement, the breach thereof, or the subject matter thereof, shall be settled by binding arbitration, which shall be conducted in Dallas, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and which to the extent of the subject mater [sic] of the arbitration, shall be binding not only on the parties to the Agreement, but on any other entity controlled by, in control of or under common control with the party to the extent that such affiliate joins in the arbitration, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

[2] During the arbitration proceedings, four of the defendant corporations filed Chapter 7 bankruptcy petitions. Weyand and Thiessen argue that these bankruptcy filings affected the arbitration panel's jurisdiction over the entire arbitration proceeding. We need not address this issue because we conclude on other grounds that the arbitration panel lacked jurisdiction to render an award against Weyand and Thiessen.

No. 09-11000

intervenors did not participate in the arbitration proceeding. After conducting an evidentiary hearing, the panel issued a decision on April 1, 2009, awarding the plaintiffs damages and fees totaling $13,317,381 against Weyand and $311,329 against Thiessen.[3]

The plaintiffs (but not the intervenors) then filed a motion in the federal district court, seeking confirmation of the arbitration award. The court did not treat this motion as continuing the previous action, but instead assigned it a new docket number and treated it as a new case. It is unclear why the district court handled the case in that way, but the parties did not object. On September 2, 2009, the court issued an order granting the plaintiffs' motion. On September 3, the court entered judgment against Weyand and Thiessen, ordering them to pay "the amounts awarded by the arbitrators on April 1, 2009." Weyand and Thiessen filed a timely notice of appeal as to both the order and the judgment.

## ANALYSIS

### I.

The central question in this appeal is whether Weyand and Thiessen, in their personal capacities, are bound by the arbitration agreements that were entered into by the defendant corporations, of which they were the CEO and CFO. Applying well-established general principles of contract and agency law, we conclude that Weyand and Thiessen are not personally bound by the arbitration agreements.

The standard of review for a district court's confirmation of an arbitration award is de novo, using the same standard as the district court. *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003). Under the Federal Arbitration Act, an arbitration award can be vacated for any of several

---

[3] The arbitration panel also held another individual defendant, Kelly G. Rogers, liable for a total of $730,123. Rogers is not a party to this appeal.

No. 09-11000

enumerated reasons, one of which is that "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009).

We have stated that "[o]rdinary principles of contract and agency law may be called upon to bind a nonsignatory to an [arbitration] agreement whose terms have not clearly done so." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003). We need not decide in this case whether those principles should be drawn from Texas law or federal law,[4] because both bodies of law lead us to the same conclusion. *See Railroad Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws . . . , there is no conflict, and a court need not undertake a choice of law analysis.").

Weyand and Thiessen, as CEO and CFO of the defendant corporations, were the corporations' agents. Under general principles of contract and agency law, the fact that the defendant corporations entered into the Subscription Agreements did not cause their agents, Weyand and Thiessen, who acted only as officers on behalf of the corporations, to be personally bound by those agreements. For instance, the Restatement (Third) of Agency

---

[4] The Subscription Agreements themselves state that they are to be governed by Texas law. The Supreme Court's opinion in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) supports the application of state law: "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. However, our court has stated that "the federal substantive law of arbitrability" applies to the question of "to what extent a non-signatory is bound by an arbitration provision contained in a contract she is suing under." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004). (The question in *Washington Mutual* was similar to, but distinct from, the question we are deciding here, which is whether Weyand and Thiessen, who are non-signatories, are bound by arbitration provisions contained in contracts under which they are being sued.) The Texas Supreme Court has stated that, given the uncertainty about whether federal or state law governs the question of whether a nonsignatory is bound by an arbitration agreement, "we have determined to apply state substantive law and endeavor to keep it consistent with federal law." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (citing *In re Weekley Homes*, 180 S.W.3d 127, 130-31 (Tex. 2005)).

5

No. 09-11000

states: "When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise." Restatement (Third) of Agency § 6.01 (2006). The Restatement (Second) of Agency says substantively the same thing: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958).

A recent Texas appellate decision, *Roe v. Ladymon*, 318 S.W.3d 502 (Tex. App.–Dallas 2010, no pet.), applied these general principles to a set of facts very similar to those of the present case. Roe, a homeowner, entered into a contract with Metro LLP, a contractor. *Id.* at 507. Ladymon signed the contract in his capacity as a partner of Metro. *Id.* When Roe was unsatisfied with Metro's work, she pursued arbitration against both Metro and Ladymon. *Id.* at 508. The arbitrator awarded damages to Roe and held that Metro and Ladymon were jointly and severally liable for those damages. *Id.* at 509. However, when Roe filed suit to confirm the arbitration award, the state trial court "held that the arbitrator had exceeded his authority in rendering an award against Ladymon individually." *Id.* The court of appeals affirmed. The court explained that "by signing the contract as an agent for a disclosed principal, Ladymon did not become personally bound by the terms of that contract, including the arbitration clause." *Id.* at 521.

The *Roe* court explained why that case was different from another class of cases, in which courts have held that plaintiffs who had signed arbitration agreements could be compelled to arbitrate their disputes with nonsignatory defendants. Such cases include *In re Vesta Insurance Group, Inc.*, 192 S.W.3d 759 (Tex. 2006), in which "a signatory to a contract containing an arbitration

6

No. 09-11000

clause filed . . . suit [in court] against non-signatory officers and agents of the other party to the contract," thereby attempting to avoid arbitration. *Roe*, 318 S.W.3d at 520 (citing *Vesta*, 192 S.W.3d at 762-63). In other words, "[t]he signatory plaintiff [in *Vesta*] was resisting arbitration while the non-signatory defendants sought to hold the signatory plaintiff to abide by his agreement to arbitrate." *Id.* The *Roe* court explained, "*Vesta* stands for the proposition that a signatory plaintiff cannot avoid its agreement to arbitrate disputes simply by bringing . . . claims against the [nonsignatory] officers, agents, or affiliates of the other signatory to the contract." *Id.* This proposition is based on "estoppel principles" because it essentially involves holding the plaintiff to his agreement to arbitrate. *See id.* But *Roe* was fundamentally different from *Vesta* because in *Roe*, "the party resisting arbitration did not sign the agreement to arbitrate [in his individual capacity]." *Id.* Thus, in *Roe* there was no "basis to 'estop' [the defendant] from refusing to arbitrate because he never agreed to arbitrate." *Id.* at 520-21. The present case is like *Roe* and unlike *Vesta* because here, the parties resisting arbitration, Weyand and Thiessen, never personally agreed to arbitrate. Thus, under *Roe*, Weyand and Thiessen are not bound by the arbitration agreements.[5]

Federal courts addressing similar fact patterns have followed essentially the same reasoning used by the *Roe* court, and have reached analogous results. In *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999), the Third Circuit partially reversed a district court's order compelling arbitration; the appellate court held that only the defendant

---

[5] The district court in this case erroneously relied on *McMillan v. Computer Translation Systems & Support, Inc.*, 66 S.W.3d 477 (Tex. App.–Dallas 2001, no pet.), a case whose fact pattern was like that of *Vesta*: in *McMillan*, the plaintiff, a business which was a signatory to an arbitration agreement, was compelled to arbitrate its claims against individuals who were agents of the defendant corporation, even though those individuals had not personally agreed to arbitrate. *McMillan* is inapposite for the same reasons as *Vesta*.

No. 09-11000

corporation and not its individual directors and officers were bound by an arbitration agreement, because the directors and officers had not personally agreed to arbitrate. *Id.* at 446. The Third Circuit reasoned, "Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.* at 444. And in *Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003), the Second Circuit upheld a preliminary injunction preventing a plaintiff from pursuing arbitration proceedings against a defendant which was not a party to the arbitration agreement. *Id.* at 132. The defendant resisting arbitration in *Merrill Lynch* was a corporation which was affiliated with another corporation that had entered into the arbitration agreement. *Id.* at 130.

The *Bel-Ray* and *Merrill Lynch* courts both distinguished a prior case, *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), in which plaintiffs who had signed an arbitration agreement had been compelled to arbitrate claims against two nonsignatory defendants (an individual and a corporation) that were agents of the other party to the agreement. The Second Circuit succinctly explained that *Pritzker* was distinguishable because "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch*, 337 F.3d at 131; *see also Bel-Ray*, 181 F.3d at 444-45. This was the same distinction that the *Roe* court employed in distinguishing *Vesta*.

The Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), is also instructive, as it involved a similar set of facts, although the Court's opinion focused on a slightly different question — the threshold issue of whether the parties had "agree[d] to submit the arbitrability question itself to arbitration." *Id.* at 943. In that case, the plaintiff (First Options) had entered into an arbitration agreement with a corporate defendant (MKI) and sought to compel MKI's owner and his wife

8

(the Kaplans) to arbitrate, even though the Kaplans were not parties to the arbitration agreement.  The arbitration panel ruled that it had the power to enter an award against the Kaplans despite their unwillingness to arbitrate. But "the Third Circuit agreed with the Kaplans that their dispute was not arbitrable," *id.* at 941, and the Supreme Court affirmed, *id.* at 949.[6]

In summary, both the Texas and federal courts have recognized that "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch*, 337 F.3d at 131.  In this case, the parties resisting arbitration — Weyand and Thiessen in their individual capacities — are not signatories. Under ordinary principles of contract and agency law, their status as the CEO and CFO and agents of the defendant corporations is insufficient to personally bind them to the arbitration agreements.

Nonetheless, the plaintiffs argue that we must defer to the arbitration panel's determination that it had jurisdiction over Weyand and Thiessen, because the arbitration provisions in the Subscription Agreements gave the

---

[6] One federal appellate court has reached the opposite result on a set of facts that was analogous to those of *First Options*, *Bel-Ray*, *Merrill Lynch*, and *Roe*. *See Lee v. Chica*, 983 F.2d 883 (8th Cir. 1993).  However, in light of more recent Supreme Court and Eighth Circuit cases, *Lee* seems to have been impliedly overruled.

In *Lee*, the Eighth Circuit held that an employee of a securities brokerage firm was personally bound by an arbitration agreement that the firm had entered into with a customer, even though the employee was not a party to that agreement.  *Id.* at 887.  But *Lee* is contradicted by a more recent Eighth Circuit case, *Nitro Distributing, Inc. v. Alticor, Inc.*, 453 F.3d 995 (8th Cir. 2006), in which the Eighth Circuit made the same distinction that the *Bel-Ray* and *Merrill Lynch* courts made — explaining that "situations where a *nonsignatory* attempts to bind a *signatory* to an arbitration agreement" are crucially different from those where "the signatory[] is attempting to bind the nonsignatory . . . to the arbitration agreement."  *Id.* at 999.  Relying on this distinction, the *Nitro* court held that the nonsignatory plaintiffs in that case were not bound by an arbitration agreement they had not signed.  *Id.* While the *Nitro* court did not expressly address *Lee*, the *Nitro* court most likely regarded *Lee*'s holding as having been superseded by the Supreme Court's intervening decision in *First Options*.

arbitration panel the power to determine its own jurisdiction.[7] Relying on our court's opinion in *Agere Systems, Inc. v. Samsung Electronics Co.*, 560 F.3d 337 (5th Cir. 2009), the plaintiffs contend that the arbitration panel's decision regarding its own jurisdiction must be accepted unless it is "wholly groundless." *Id.* at 340 (quoting *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)) (internal quotation marks omitted).  However, *Agere* is inapposite here because in *Agere*, an arbitration agreement undisputedly existed between the parties, and the dispute was over "whether the arbitration clause [was] still in effect." *Id.*  By contrast, the present case involves a simpler type of dispute which, we have held, is for the courts and not the arbitrator to decide in the first instance: a dispute over whether the parties entered into any arbitration agreement in the first place.  "[I]t is clear that because arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003).  We held in *Will-Drill* "that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Id.* at 219.[8]  Because

---

[7] This argument relies on a sentence in the Subscription Agreements which says that arbitration "shall be conducted . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association [AAA]."  Rule 7 of the AAA's rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  Some of our sister circuits have held that an arbitration agreement that refers to the AAA's rules thereby clearly and unmistakably demonstrates that the parties to the agreement to arbitrate intended to give the arbitrator the power to determine whether an issue or dispute is arbitrable. *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (citing *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

[8] *See also In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189 (Tex. 2009) (agreeing with *Will-Drill* on this point).

No. 09-11000

that is the type of dispute we are addressing here, we do not owe deference to the arbitration panel's determination of its own jurisdiction.[9]

The plaintiffs also argue that Weyand and Thiessen should be barred by judicial estoppel[10] from claiming that they did not personally agree to arbitrate. This argument is based on the fact that Weyand, in his role as a defendant in a separate lawsuit in another federal district court involving different plaintiffs, successfully filed a motion to compel arbitration, requiring the plaintiffs in that case to arbitrate their claims against him personally rather than seeking relief in court. *Patterson Co. v. Weyand*, No. CIV-09-133-RAW (D. Okla. July 31, 2009). Weyand's motion in that case was based on an

---

[9] Moreover, our opinion in *Agere* itself explains why the "wholly groundless" standard does not apply to this case: that standard applies only when "the parties 'unmistakably intend[ed] to delegate the power to decide arbitrability to an arbitrator.'" 560 F.3d at 340 (quoting *Qualcomm*, 466 F.3d at 1371). Likewise, the Supreme Court held in *First Options* that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." 514 U.S. at 944 (alterations omitted) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). In this case, given that Weyand and Thiessen did not personally agree to arbitrate at all, it certainly follows that there is no "clear and unmistakable" evidence that they agreed to delegate questions of arbitrability to the arbitrator. The arbitration provisions in the Subscription Agreements may be sufficient to show that *the parties to those agreements* intended to confer that power on the arbitration panel, but — as explained above — Weyand and Thiessen are not personally bound by the Subscription Agreements.

[10] "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 *Moore's Federal Practice* § 134.30, at 134-62 (3d ed. 2000)) (internal quotation marks omitted). "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Id.* at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

11

arbitration provision that is identical to the arbitration provisions that are at issue in the present case.  However, we are not persuaded by the plaintiffs' judicial estoppel argument because, in light of the distinction explained above, there is no genuine inconsistency between Weyand's positions in the other case and the present case.  Again, "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch*, 337 F.3d at 131. In the present case, the parties resisting arbitration are Weyand and Thiessen, who are not signatories or parties to the contracts at issue.  By contrast, in the other case, the parties resisting arbitration were signatories to the contract.  Because Weyand has not taken inconsistent positions, the plaintiffs' judicial estoppel argument fails.

The plaintiffs additionally argue that Weyand and Thiessen are bound by the arbitration provisions in the Subscription Agreements because of language in the agreements referring to "affiliates."  The plaintiffs contend that the agreements purport to bind "affiliates" of the defendant corporations, and they further claim that Weyand and Thiessen count as "affiliates."[11] However, this argument fails because, even if the Subscription Agreements could be interpreted in that manner, the defendant corporations lacked the authority to bind Weyand and Thiessen personally.  As the Third Circuit explained in *Bel-Ray*, "under traditional agency principles, [unless the agent agrees to be personally bound,] the only other way . . . an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority."

---

[11] The district court's order of January 29, 2008 explained the basis of this argument as follows: "Regulation 13.03, which is found in Exhibit A to the Subscription Agreements . . . states that the regulations include the entire agreement of the Members and their Affiliates. Paragraph 16 of the Subscription Agreement[s], which is the arbitration clause, describes affiliates as any other entity controlled by, in control of, or under common control with a party." Slip Op. at 8.

No. 09-11000

181 F.3d at 445. The plaintiffs have not identified anything in the record which would establish that the defendant corporations (the principals) had any type of authority to bind Weyand and Thiessen (the agents) personally. In the absence of such authority, the language about "affiliates" in the Subscription Agreements cannot have been sufficient to make the arbitration provisions binding on Weyand and Thiessen.

## II.

Finally, we address Weyand and Thiessen's argument that this court lacks jurisdiction to review the district court's judgment of September 3. There is no doubt that we at least have jurisdiction to review the district court's order of September 2, which granted the plaintiffs' motion to confirm the arbitration award. *See* 9 U.S.C. § 16(a) ("An appeal may be taken from . . . an order . . . confirming or denying confirmation of an award or partial award . . . ."). However, we must consider whether we also have jurisdiction to review the September 3 judgment, because we are required to be careful about the limits of our jurisdiction. *See, e.g.*, *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002) ("[F]ederal courts are courts of limited jurisdiction. We thus make especially certain that we take jurisdiction only over such cases as Congress has provided by statute.").

According to Weyand and Thiessen, the September 3 judgment was not an appealable "final decision" under 28 U.S.C. § 1291 because it did not dispose of all parties and claims in the case. As we explained in *Bader v. Atlantic International, Ltd.*, 986 F.2d 912 (5th Cir. 1993), "[i]n a lawsuit which contains multiple claims and/or multiple parties, [an appealable] final judgment exists only if it meets one of two conditions: The judgment must either adjudicate all claims, rights, and liabilities of all parties or the district court must expressly conclude that no just reason exists for delaying the entry of final judgment and must expressly order the entry of that judgment

No. 09-11000

pursuant to Rule 54(b) of the Federal Rules of Civil Procedure." *Id.* at 914-15.[12]  Likewise, in *Bridgmon v. Array Systems Corp.*, 325 F.3d 572 (5th Cir. 2003), we reasoned that "[i]f the district court did not enter a final judgment disposing of all parties and claims (or certify claims upon which judgment was granted as a partial final judgment under Rule 54(b)) then this court would not have jurisdiction over this appeal." *Id.* at 574 n.2 (citing 28 U.S.C. § 1291).  Here, the district court did not make the express determination required by Rule 54(b) when it entered the September 3 judgment; therefore, the judgment was an appealable final decision only if it disposed of all the parties and claims in the case.

Weyand and Thiessen's specific argument is that the September 3 judgment failed to dispose of all parties and claims because it did not address the claims of the 19 intervenors who were parties to one of the two original state-court suits that were removed and consolidated in federal court.  Those intervenors were still parties to that consolidated case when the district court entered the order of January 29, 2008, holding that all the defendants were bound by the arbitration agreement and "administratively clos[ing]" the case pending the arbitration proceedings.  However, after the arbitration panel issued its award and the plaintiffs filed their motion to confirm the award, the district court treated that motion as commencing a new case rather than

---

[12] Rule 54(b) states:

**Judgment on Multiple Claims or Involving Multiple Parties.**  When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

14

reopening the old one.[13]  The district court gave the case a new docket number, and did not treat the intervenors as being included among the parties to the new case.  The intervenors did not participate in the new case (nor had they participated in the arbitration proceeding).  Therefore, when the district court entered the judgment of September 3, it disposed of all the claims and parties that were actually in the case.  Consequently, the judgment of September 3 was a final decision under § 1291, and we have jurisdiction to review it.

## CONCLUSION

Under ordinary principles of agency law, whether drawn from Texas or federal law, Weyand and Thiessen's roles as the CEO and CFO of the defendant corporations are insufficient to bind them personally to arbitration agreements that the corporations entered into.  The plaintiffs have failed to identify any valid basis for Weyand and Thiessen to be personally bound by the arbitration agreements.  Accordingly, we REVERSE the district court's order of September 2 and its judgment of September 3, and REMAND the case for further proceedings consistent with this opinion.

---

[13] Weyand and Thiessen insist that the district court must have really reopened an old case, rather than commencing a new one, because the plaintiffs, in filling out a form that they filed with their motion for confirmation of the arbitration award, checked a box marked "Reinstated or Reopened."  However, this does not alter the fact that the district court, once it received the motion, treated it as commencing a new case.  None of the parties raised any objection to the district court's doing so.