*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID DEMERSE,

      Plaintiff-Appellant,

v

HELEN NEWBERRY JOY HOSPITAL,

      Defendant-Appellee.

FOR PUBLICATION
June 29, 2026
9:30 AM

No. 373567
Luce Circuit Court
LC No. 24-006894-CK

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

In this declaratory action, plaintiff appeals by right the circuit court's order granting summary disposition to defendant under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and requiring plaintiff to submit to arbitration of defendant's claims against him. On appeal, plaintiff contends that the trial court erred in: (1) ignoring basic tenets of contract, corporate, and agency law; (2) failing to take note of significant factual differences between leading Michigan caselaw and the instant case; and (3) ignoring the distinction between binding a resisting signatory to an arbitration agreement and binding a resisting non-signatory. We reverse and remand.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

At all relevant times, plaintiff was the sole member, owner, officer, director, and manager of Newton Hometown Pharmacy LLC (the Pharmacy), which operated a pharmacy in Newberry, Michigan. Defendant operates a hospital in Newberry. In 2015, defendant and the Pharmacy executed a services agreement (the Agreement), under which defendant engaged the Pharmacy for the procurement of drugs under a federal program known as the 340B Program, pursuant to 42 USC 256(b). Plaintiff signed on behalf of the Pharmacy in his capacity as its sole member. Plaintiff did not sign the agreement in his individual capacity. The Agreement included the following arbitration provision:

> All claims and disputes that (1) are between Pharmacy and Hospital or either's subsidiaries, parents, affiliates, officers, directors, and/or employees, and (2) arise out of or relate to the Agreement or its subject matter, interpretation,

-1-

performance or enforcement, or any other agreement, transaction or occurrence between Hospital and Pharmacy (including any tort or statutory claim) . . . shall be arbitrated by a sole arbitrator . . . in accordance with the Center for Public Resources' Rules for Non-Administered Arbitration . . . and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof.

In 2023, the Pharmacy initiated an arbitration proceeding against defendant. Defendant counterclaimed and requested leave to join plaintiff as a party. The Pharmacy, however, refused to agree to the joinder of plaintiff. Defendant then filed a notice of arbitration bringing claims against plaintiff individually. Defendant argued that the arbitration provision of the Agreement rendered its claims against plaintiff subject to arbitration. Defendant alleged that plaintiff violated the Agreement by removing prescriptions from 340B pricing, which resulted in financial losses to defendant. Defendant also alleged that, in late 2023, plaintiff, on behalf of the Pharmacy, executed a purchase agreement for the sale of the Pharmacy's assets, and did not voluntarily disclose the sale to defendant until plaintiff was deposed in March 2024. Defendant further alleged that plaintiff then "sought to dilute [the Pharmacy's] assets," by making disbursements for less than fair market value in the intervening time. Defendant brought claims of tortious interference with the Agreement, tortious interference with a business relationship or expectancy, and fraudulent conveyance in violation of the Uniform Voidable Transactions Act, MCL 566.31, *et seq*.

In response, plaintiff filed this action for declaratory judgment, arguing that, because he was not a party to the Agreement, defendant's claims against him in his individual capacity were not subject to its arbitration provision. Defendant moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10) (no genuine issue of material fact), arguing that plaintiff was bound by the arbitration provision under "agency theory," citing *Altobelli v Hartmann*, 499 Mich 284; 884 NW2d 537 (2016), and *Steward v Flint Sch Dist*, 346 Mich App 700; 13 NW3d 673 (2023). Alternatively, defendant argued that plaintiff was properly bound by the arbitration provision by operation of the doctrine of piercing the corporate veil. Plaintiff responded that he, as a nonsignatory to the Agreement, was not bound to the arbitration provision under ordinary contract principles. Plaintiff additionally argued that defendant had not demonstrated wrongdoing to justify piercing the corporate veil.

At the conclusion of a hearing on the motion, the trial court reasoned as follows:

The Court finds persuasive the agency principles argument . . . .

Further, . . . in this instance, . . . Plaintiff . . . is it. There isn't anyone else. He's the sole officer, agent, and so on. And so, . . . I think under [MCR 2.116(C)(8)] the Court has to grant the motion for failure to state a claim upon which relief can be granted.

The court followed with a written order granting defendants' motion for summary disposition and dismissing plaintiff's complaint. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews summary disposition rulings de novo. See *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004).

A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of a claim and is tested on the pleadings alone." *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 139; 565 NW2d 383 (1997). If a plaintiff alleges a claim on a written contract, the plaintiff must attach the contract to the complaint, and the contract becomes part of the pleadings the court must consider in deciding a (C)(8) motion. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). See also MCR 2.113(C). When considering a motion under MCR 2.116(C)(8), a court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A court should only grant such a motion "where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

Defendant's proposed alternative ground for affirmance, piercing the corporate veil, implicates questions of fact, and summary disposition on this basis could only be properly granted under MCR 2.116(C)(10). Summary disposition under (C)(10) is warranted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A summary disposition movant must initially come forward with admissible evidence in support of its basis for relief "when judgment is sought based on subrule (C)(10)." MCR 2.116(G)(3). "[I]f a moving party presents evidence to support a motion for summary disposition under MCR 2.116(C)(10), the burden shifts to the party opposing the motion to produce evidence to show that there is a genuine issue of material fact." *Cleveland v Hath*, 350 Mich App 320, 331; 32 NW3d 109 (2024).

A trial court's determination that an issue is subject to arbitration is also reviewed de novo. *In re Nestorovski Estate*, 283 Mich App 177, 184; 769 NW2d 720 (2009). Likewise, issues of contract interpretation present questions of law that are reviewed de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002).

## III. ANALYSIS

We hold that, although plaintiff acted as the Pharmacy's agent, agency principles cannot be applied to compel plaintiff, a nonsignatory to the Agreement, to arbitrate the claims defendant has brought against him in his individual capacity. Further, defendant has failed to come forward with the requisite admissible evidence in support of its alternative argument that it is entitled to summary disposition pursuant to MCR 2.116(C)(10) because plaintiff's actions merit piercing the corporate veil. MCR 2.116(G)(3).

"Michigan public policy favors arbitration to resolve disputes," and likewise favors keeping related issues in a single forum. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 155, 163; 742 NW2d 409 (2007). "The purpose of arbitration is to avoid protracted litigation." *Cipriano v Cipriano*, 289 Mich App 361, 367; 808 NW2d 230 (2010). "The scope of an arbitrator's remedial authority is limited to the contractual agreement of the parties." *Nordlund*

& *Assoc*, *Inc v Village of Hesperia*, 288 Mich App 222, 228; 792 NW2d 59 (2010) (quotation marks and citation omitted). Any doubts about the arbitrability of an issue should be resolved in favor of arbitration. *Rooyakker*, 276 Mich App at 163.

However, the "general position favoring arbitration does not go so far as to override foundational principles of contractual interpretation." *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021). "Arbitration is a matter of contract." *Arrow Overall Supply Co v Peloquin Enterprises*, 414 Mich 95, 98; 323 NW2d 1 (1982) (quotation marks and citations omitted). Honoring the intent of the parties is the primary goal of contract interpretation. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003). This Court has specifically stated that this maxim applies to arbitration agreements. *Bienenstock & Assoc, Inc v Lowry*, 314 Mich App 508, 515; 887 NW2d 237 (2016). See also *Altobelli*, 499 Mich at 295.

Generally, "a party cannot be required to arbitrate when it is not legally or factually a party to the agreement." *St Clair Prosecutor v American Federation of State, Co and Muni Employees, AFL-CIO, St Clair Co Gen Employees Chapter, Local #1518*, 425 Mich 204, 223; 388 NW2d 231 (1986) (quotation marks, citation, and brackets omitted). See also *Arrow Overall Supply Co*, 414 Mich at 98. However, "nonsignatories of arbitration agreements can still be bound by an agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel." *American Federation of State, Co and Muni Employees Council 25 v Wayne Co*, 292 Mich App 68, 81; 811 NW2d 4 (2011) (*AFSCME Council 25*).

In this case, defendant and the Pharmacy, two business entities, were the parties to the Agreement. This Court has recognized that a "corporation is its own 'person' under Michigan law, an entity distinct and separate from its owners, even when a single shareholder holds ownership of the entire corporation," and that "rules respecting the corporate form apply equally to limited liability corporations." *Hills and Dales Gen Hosp v Pantig*, 295 Mich App 14, 20-21; 812 NW2d 793 (2011). The Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*, specifies that, "[u]nless otherwise provided by law or in an operating agreement, a person that is a member or manager, or both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company." MCL 450.4501(4). See also *Duray Dev, LLC v Perrin*, 288 Mich App 143, 151; 792 NW2d 749 (2010) ("Once a limited liability company comes into existence, limited liability applies, and a member or manager is not liable for the acts, debts, or obligations of the company."). Further, "[a]n agent who contracts with a third party on behalf of a disclosed principal is generally not liable to the third party in the absence of an express agreement to be held liable." *Howard & Howard Attorneys PLLC v Jabbour*, 311 Mich App 524, 526; 880 NW2d 1 (2015). In this case, plaintiff's role in the Agreement, even though he was the sole owner, member, and manager of the Pharmacy, was that of agent to the Pharmacy, leaving him, in his individual capacity, a nonparty to the Agreement.

Defendant emphasizes that plaintiff comes under the principle stated in *AFSCME Council 25* that "nonsignatories of arbitration agreements can still be bound by an agreement pursuant to ordinary contract-related legal principles, including . . . agency, [and] veil-piercing/alter ego . . . ." *AFSCME Council 25*, 292 Mich App at 81.

-4-

Defendant asserts that *Altobelli* and *Steward* constitute the governing caselaw concerning when agency principles bind a nonsignatory to an arbitration agreement. In *Altobelli*, the plaintiff was a member of a professional LLC law firm, who, like every member of the firm, signed the firm's operating agreement.[1] *Altobelli*, 499 Mich at 288. The operating agreement contained a provision mandating arbitration of "[a]ny dispute, controversy or claim . . . between the Firm or the Partnership and any current or former Principal or Principals of the Firm."[2] *Id*. at 289. A dispute arose between the plaintiff and the other firm members when the plaintiff requested a leave of absence to pursue another job. *Id*. at 290-291. Eventually, the plaintiff brought claims in court against several individual firm members, all of whom had signed and were parties to the operating agreement. *Id*. at 292 & n 3. The defendants sought to force the plaintiff to arbitrate, raising the question whether the claims fell within the scope of their operating agreement's arbitration clause. *Id*. at 292-294. The Supreme Court first considered whether the parties were covered by the arbitration clause, then whether the subject matter of the claims was covered by that provision. *Id*. at 296.

The *Altobelli* Court noted that the arbitration clause explicitly applied to disputes between "the Firm" and any of its members, and considered whether this encompassed disputes between firm members. *Id*. at 296. In answering this question, the Court reasoned as follows:

> Here, we must consider the concept of agency. Although no Michigan court has explicitly applied agency principles when interpreting an arbitration clause, it is well established that corporations can only act through officers and agents. . . . This reflects the fact that a company is not a physical being capable of taking its own actions or making its own decisions. Indeed, a firm cannot act on its own behalf. Therefore, the acts of officers and agents of a corporation, within the scope of their employment, are the acts of the corporation. [*Id*. at 296-297 (quotation marks, citations, and brackets omitted).]

The Court held that "agency principles apply in determining who is included within the scope of the arbitration clause." *Id*. at 299. The Court explained that "because these particular defendants are clearly endowed with agency authority to administer the Firm's affairs, the individually named defendants must be included within the meaning of 'the Firm' in the arbitration clause." *Id*. at 302. After determining that the plaintiff's claims fell within the scope of the clause as well, the Court ruled that the case was "subject to binding arbitration under the arbitration clause of the Operating Agreement." *Id*. at 306.

It bears repeating that *Altobelli* addressed whether claims fell under an arbitration requirement when all the parties to the claims were signatories to the arbitration agreement in their

---

[1] "The introductory section of the Operating Agreement states that the document 'by and between the [Principals] . . . evidences the following agreement between them[.]' " *Altobelli*, 499 Mich at 288.

[2] The operating agreement provided that members of the firm were referred to therein as "principals." *Id*. at 288.

individual capacities as members of the firm.[3]  *Id*. at 288, 292 n 3.  In *Altobelli*, the Court cited several federal appellate cases involving nonsignatories to arbitration agreements, but each dealt with a company's nonsignatory agent attempting to enforce arbitration against a signatory.  *Id*. at 298-299.  It was this federal caselaw[4] permitting nonsignatory agents to avail themselves of the arbitration agreement to which the party resisting arbitration had agreed that our Supreme Court found persuasive in applying the concept of agency to hold that the *Altobelli* plaintiff's claims against the firm's agents were equivalent to claims against the firm itself.  *Id*. at 298-299, 302.  On the other hand, the present case addresses a signatory attempting to enforce arbitration against a nonsignatory.  This materially, factually distinguishes the present case from *Altobelli*, and likewise *Steward*.

This Court recently considered a situation similar to *Altobelli* in *Steward*, where the plaintiff had been employed as a superintendent of schools under a written employment agreement with the school district.  *Steward*, 346 Mich App at 703.  The plaintiff, as an individual, and the "Board of Education of the School District of the City of Flint," as an entity, were signatories to this agreement, but the individual board members were not.  *Id*. at 702.  The agreement contained a clause requiring arbitration of all disputes arising out of the agreement.  *Id*. at 708.  When the school board terminated the plaintiff's employment, she brought claims in court against several board members, who sought to compel arbitration on the basis of the employment agreement.  *Id*. at 702.

*Steward* began its analysis by reiterating that "[a]rbitration is a matter of contract," and that "[i]t goes without saying that a contract cannot bind a nonparty."  *Id*. at 705 (quotation marks and

---

[3] We note that defendant argues that the law firm members did not sign the agreement in their individual capacities.  While it is true that *Altobelli* never specifically indicates that they signed as individuals, clearly that was the case.  Unlike the present case, the members were not signing in a representative capacity to bind the law firm to an agreement with a third party, they were signing an agreement "by and between" the members of the law firm, binding themselves to the terms in the operating agreement.  *Altobelli*, 499 Mich at 288.  In contrast, in this case, plaintiff signed the Agreement solely in a representative capacity on behalf of the Pharmacy, in order to bind Pharmacy to the terms of the Agreement with defendant.  Based on the plain language of the contract at issue, defendant contracted to bind the Pharmacy, it did not contract to bind plaintiff individually.  However, as noted in this opinion, whether plaintiff could be individually subject to the Agreement's arbitration provision under another theory is a separate issue.

[4] *Arnold v Arnold Corp-Printed Communications for Business*, 920 F2d 1269, 1281 (CA 6, 1990) (recognizing that a contrary ruling would allow a plaintiff who signed an arbitration agreement with a company to "avoid the practical consequences of [the agreement] by naming . . . parties in their individual capacities only"), abrogated in part by 9 USC 2 (abating broad presumptions favoring arbitration, stating that arbitration agreements are enforceable "upon such grounds as exist at law or in equity for the revocation of any contract"); *Pritzker v Merrill Lynch, Pierce, Fenner & Smith, Inc*, 7 F3d 1110, 1122 (CA 3, 1993) (recognizing that a corporation "can only act through its employees, and an arbitration agreement would be of little value if it did not extend to [them]" (quotation marks and citations omitted; alteration in original)); *Grand Wireless, Inc v Verizon Wireless, Inc*, 748 F3d 1, 11 (CA 1, 2014).

citations omitted).  However, in determining whether the board members could properly "avail themselves of the arbitration provision," this Court recognized that *Altobelli* held that agency principles can apply to determine the scope of a party's arbitration agreement.  *Id*. at 704, 706. This Court concluded that when "[a]pplying that principle in the context of [a] dispute involving indistinguishable factual claims against a public-school-district employer and its individual agents, those who act on behalf of the school district . . . may avail themselves of an arbitration provision contained in [the] contract between the school district itself and [the plaintiff]."  *Id*.  This Court reasoned that "[t]o deprive the board members of the arbitration provision in the employment agreement that was signed by the district and its superintendent would nullify 'the effect of the rule requiring arbitration,' " by allowing the plaintiff-signatory to avoid the arbitration agreement she made with the board.  *Id*., quoting *Altobelli*, 499 Mich at 299.

Importantly, the parties to this case fail to cite any published Michigan caselaw holding that the principle that "nonsignatories of arbitration agreements can . . . be bound by an agreement pursuant to . . . agency," includes a situation in which the party resisting the arbitration is a nonsignatory.  *AFSCME Council 25*, 292 Mich App at 81.  Again, in *Altobelli*, our Supreme Court dealt with a situation where all parties were signatories, and illustrated the concept of agency principles "binding" a nonsignatory by citing federal cases in which a nonsignatory agent was permitted to enforce an arbitration agreement between its principal and a resisting signatory. *Steward* applied agency law to "bind" nonsignatory agents to the arbitration agreement by allowing them to avail themselves of the agreement made by their principal, the school board, enforcing the agreement against the plaintiff who signed the agreement in her individual capacity.

Given the lack of precedential caselaw addressing the present fact scenario, whether a resisting nonsignatory may be compelled to arbitrate, we review caselaw from other jurisdictions for persuasive guidance.  Plaintiff cites *DK Joint Venture 1 v Weyand*, 649 F3d 310 (CA 5, 2011), in support of his arguments, in which the United States Court of Appeals for the Fifth Circuit considered whether the chief executive officer (CEO) and chief financial officer (CFO) of corporations that had executed arbitration agreements with the plaintiffs were bound thereby in their individual capacities and so could be compelled to arbitrate.  *Id*. at 314.  The court ruled they could not, reasoning that "[u]nder general principles of contract and agency law, the fact that the defendant corporations entered into the [arbitration agreements] did not cause their agents, [the CEO and CFO], who acted only as officers on behalf of the corporations, to be personally bound by those obligations."  *Id*.  More specifically, the court held that " 'it matters whether the party resisting arbitration is a signatory or not.' "  *Id*. at 316, quoting *Merrill Lynch Investment Managers v Optibase, Ltd*, 337 F3d 125, 131 (CA 2, 2003) (noting that whether the resisting party is a signatory is "decisive").  Further, it recognized that the "case was different from another class of cases, in which courts have held that plaintiffs who had signed arbitration agreements could be compelled to arbitrate their disputes with nonsignatory defendants."  *DK Joint Venture 1*, 649 F3d at 315.  Unlike that class of cases, "the parties resisting arbitration" in *DK Joint Venture 1* "never personally agreed to arbitrate."  *Id*. at 315.  Because the "parties resisting arbitration . . . in their individual capacities . . . are not signatories," the court concluded that "[u]nder ordinary principles of contract and agency law, their status as the CEO and CFO and agents of the defendant corporations is insufficient to personally bind them to the arbitration agreements."  *Id*. at 317.

Plaintiff also cites *Bel-Ray Co, Inc v Chemrite (Pty) Ltd*, 181 F3d 435 (CA 3, 1999), where the United States Court of Appeals for the Third Circuit reversed an order compelling arbitration

of claims against corporate officers on the basis of the corporate principal's arbitration agreement. *Bel-Ray*, 181 F3d at 446. The court reasoned as follows:

> In *Pritzker*[ *v Merrill Lynch, Pierce, Fenner & Smith, Inc*, 7 F3d 1110 (CA 3, 1993)], the issue was whether a signatory to an arbitration agreement could be compelled to arbitrate claims it had against the agents of the other party to the agreement. As we made clear at the outset of the opinion, the result turned on a construction of the arbitration clause to which the trustees had agreed—i.e., whether it was broad enough in scope to encompass claims against agents of the brokerage firm arising out of the relationship between the brokerage firm and the trustees. We held that by agreeing in the context of the customer's agreement to arbitrate "all controversies which may arise between us," the trustees had committed themselves to arbitrate claims against the firm *and its agents* arising out of the brokerage relationship. We noted that since the brokerage could act only through agents and employees, "an arbitration agreement would be of little value if it did not extend to [them]." *Id.* at 1122. Accordingly, "[i]n keeping with the federal policy favoring arbitration," we "extend[ed] the scope of the arbitration clauses to agents of the party who signed the agreements." *Id.*

> The issue before us, however, is not the construction of the arbitration clauses. The relevant issue here is whether an employee or agent who did not agree to arbitrate can be compelled to arbitrate his personal liability on the basis of a commitment made by the corporation he serves. [*Bel-Ray*, 181 F3d at 444-445 (citation omitted; second, third, and fourth alterations in original).]

The court concluded that no "principle of agency law enabled [the corporation] to contract away the [officers'] right to litigate their personal liability on claims brought against them." *Id*. at 444. Because the officers were not "bound by [the arbitration] agreement under traditional principles of contract and agency law," the court had "no authority to mandate" that they do so. *Id*.

This federal caselaw allowing a nonsignatory agent to enforce an arbitration agreement against a signatory, while disallowing enforcement of an arbitration agreement against a resisting nonsignatory, underscores the contract principle that "a party cannot be *required* to arbitrate when it is not legally or factually a party to the agreement." *St Clair Prosecutor*, 425 Mich at 223 (emphasis added). For these reasons, we hold that the trial court erred when it granted summary disposition to defendant on the ground that agency principles could properly be applied to compel nonsignatory plaintiff to arbitrate the claims defendant brought against him individually.

However, a nonsignatory party can be found to be a party to an agreement in certain circumstances under the law. For example, as already noted, "nonsignatories of arbitration agreements can still be bound by an agreement pursuant to . . . veil-piercing/alter ego . . . ." *AFSCME Council 25*, 292 Mich App at 81. Piercing the corporate veil allows courts to disregard the corporate form when it is used to subvert justice. See *Green v Ziegelman*, 310 Mich App 436, 451; 873 NW2d 794 (2015).

> [T]here are three requisites for piercing the corporate veil . . . : First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the

corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff. [*Nogueras v Maisel & Assoc of Mich*, 142 Mich App 71, 86; 369 NW2d 492 (1985). See also *AFSCME Council 25*, 292 Mich App at 81-82.]

In this case, defendant alleges that plaintiff committed fraud by not timely disclosing the sale of the Pharmacy's assets and disbursing the proceeds of the sale. However, the only evidence that defendant has offered for this assertion is plaintiff's deposition testimony indicating that he sold the business. That testimony did not establish that plaintiff in fact delayed disclosing the sale or disbursed any such proceeds, or indicate why any delay in disclosure, or disbursements, constituted fraudulent activity. Defendant therefore came far short of carrying its burden to demonstrate a lack of genuine issue of material fact concerning the requisites for piercing the corporate veil. MCR 2.116(G)(3); *Cleveland*, 350 Mich App at 331. Because defendant made only a cursory attempt at presenting its argument for veil-piercing, we cannot properly affirm on that alternative ground under MCR 2.116(C)(10).

## IV. CONCLUSION

Although plaintiff acted as the Pharmacy's agent, agency principles cannot properly be applied to compel plaintiff, a resisting nonsignatory to the Agreement, to arbitrate the claims defendant has brought against him in his individual capacity. Further, because defendant has not demonstrated that it is entitled to summary disposition on the issue of piercing the corporate veil, that doctrine does not offer an alternative ground for affirming the result below. For these reasons, we reverse the trial court's order granting summary disposition in defendant's favor and remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney