ACCEPTED
04-15-00268-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/24/2015 12:20:16 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00268-CV

## IN THE FOURTH COURT OF APPEALS

### SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
6/24/2015 12:20:16 PM
KEITH E. HOTTLE
Clerk

---

## AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., PAUL CAMPBELL, ROD SEAFORD, AND CHARLES OLIVER, Appellants,

### v.

### AUGUSTUS BRAY
### Appellee.

---

### On Appeal from the 57th Judicial District Court
### in Bexar County, Texas, The Honorable David A. Canales, Presiding

---

### APPELLEE'S BRIEF

---

**Jerry Galow**
State Bar No. 07594400
**Justin Studdard**
State Bar No. 24077158

**GALOW & SMITH, P.C.**
1204 Nueces
Austin, Texas 78701
Telephone: 512-481-0200
Telecopier: 512-481-0250
jerry@galowlaw.com
justin@galowlaw.com
**ATTORNEYS FOR APPELLEE**

## ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.............................................................................iii

STATEMENT ON ORAL ARGUMENT............................................................vi

ISSUES PRESENTED..................................................................................vii

STATEMENT OF FACTS...........................................................................1-3

SUMMARY OF THE ARGUMENT................................................................4-5

STANDARD OF REVIEW…………………………………………………….......6

ARGUMENT…………………….......................................................................7-37

I.      The trial court did not err in denying Appellants' motion to compel
        arbitration because there is no valid arbitration agreement……………...7-31

        A.      The arbitration agreement is not valid because AAU's promise to
                arbitrate is illusory given that the arbitration agreement does not
                contain a "savings clause" requiring notice of modifications or
                termination and that AAU can amend or terminate the agreement
                prospectively only……………………………………………………7-11

        B.      There is no valid arbitration agreement between AAU and Appellee
                because Appellee is a non-signatory in his individual capacity and he
                did not agree to arbitrate this dispute……………………………..12

        C.      Appellants Paul Campbell, Rod Seaford, and Charles Oliver
                cannot compel arbitration based on agency law or equitable estoppel
                principles……………………………………………………………13-31

                1. Appellants Paul Campbell, Rod Seaford, and Charles Oliver
                cannot compel arbitration based on agency given that the contract
                containing the arbitration agreement expressly provides that they are
                not agents of AAU; the claims asserted against them are substantively
                against them, not the AAU; and Appellee is not, in his individual
                capacity, a signatory to the arbitration agreement……………….13-27

i

2. Appellants Paul Campbell, Rod Seaford, and Charles Oliver cannot compel arbitration based on equitable estoppel given that Appellee's claims arise from general obligations imposed by tort law and Appellee is not seeking, through his claims, to derive a direct benefit from the contract containing the arbitration provision…………..27-31

II.     The trial court did not err in denying Appellants' motion to        compel arbitration because Appellee's claims are outside the scope of the agreement and arise from general obligations imposed by tort law……32-33

III.    The trial court did err in denying Appellants' motion to compel arbitration because the agreement is unconscionable given that the promise to arbitrate was not mutual, the agreement provides insufficient remedies, and the costs imposed by the arbitration agreement effectively prevent Appellee from asserting his rights in an arbitration proceeding………………………..33-37

PRAYER……………………………………………………………………37-38

CERTIFICATE OF COMPLIANCE…………………………………………...38

CERTIFICATE OF SERVICE……………………………………………………39

ii

# INDEX OF AUTHORITIES

**Cases:**

*Alexander v. Anthony Int'l. L.P.*,
341 F.3d 256 (3d Cir. 2003)……………………………………………….37

*Cleveland Constr., Inc. v. Levco Constr., Inc.*,
359 S.W.3d 843 (Tex. App.-Houston [1st Dist.] 2012, pet. dism'd)……………..6

*Covington v. Aban Offshore Ltd.*,
650 F.3d 556, (5th Cir. 2011)…………………………………………...24

*DK Joint Venture 1 v. Weyand,*
649 F.3d 310 (5th Cir.2011)…………………………………………...17,18,19

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir.2000)……………………………………………27,28

*Hadnot v. Bay Ltd.*,
344 F.3d 474 (5th Cir. 2003)……………………………………………36

*Hooters of Am., Inc. v. Phillips,*
173 F.3d 933 (4th Cir.1999)……………………………………………11

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1175 (9th Cir. 2003)…………………………………………..37

*In re C & H News Co.*,
133 S.W.3d 642 (Tex. App.-Corpus Christi 2003, orig. proceeding)………7,9,11

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749, 752–53 (Tex. 2001)……………………………………7,29,32

*In re Halliburton Co.*,
80 S.W.3d 566 (Tex. 2002)……………………………………………..7,8,9

*In re Kellogg Brown & Root, Inc.*,
166 S.W.3d 732 (Tex. 2005)…………………………………...12,13,26,28,29,30

*In re Kaplan Higher Educ. Corp.,*
235 S.W.3d 206 (Tex. 2007) (orig. proceeding)……………………...14,15,16,17

*In re Labatt Food Serv.,*
279 S.W.3d 640 (Tex. 2009)……………………………………………...28,29

*In re Odyssey Healthcare, Inc.,*
310 S.W.3d 419 (Tex. 2010)……………………………………………...7,9

*In re Olshan Found. Repair Co.,*
328 S.W.3d 883 (Tex. 2010)……………………………………………….34

*In re Palm Harbor Homes, Inc.,*
195 S.W.3d 672 (Tex. 2006)…………………………………………………33

*In re Poly-America, L.P.,*
262 S.W.3d 337 (Tex. 2008)………………………………………………9,32,36

*In re Vesta Insurance Group, Inc.,*
192 S.W.3d 759 (Tex. 2006)………………………………………14,16,17,18

*In re Weekley Homes, L.P.,*
180 S.W.3d 127 (Tex.2005)……………………………………………….32

*In the Interest of W.E.R.,*
669 S.W.2d 716 (Tex. 1984) (per curiam)…………………………………….6

*J.M. Davidson, Inc. v. Webster,*
128 S.W.3d 223 (Tex. 2003)……………………………………………...6,8

*Merrill Lynch Trust Co. FSB v. Alaniz,*
159 S.W.3d 162 (Tex. App.—Corpus Christi 2004)……………………………27

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson,*
805 S.W.2d 38 (Tex. App.—El Paso1991, no writ)……………………………32

*Meyer v. WMCO–GP, LLC,*
211 S.W.3d 302 (Tex. 2006)……………………………………………...28,29

*Nabors Drilling USA, L.P., v. Pena,*
   385 S.W.3d 103 (Tex. App.-San Antonio 2012, pet. denied)…………………….8,9

*Olshan Found. Repair Co. v. Ayala,*
   180 S.W.3d 212 (Tex. App.—San Antonio 2005, pet. denied)…………………34

*Prudential Sec. Inc. v. Marshall,*
   909 S.W.2d 896 (Tex. 1995)……………………………………………………32

*Roe v. Ladymon,*
   318 S.W.3d 502 (Tex. App.-Dallas 2010, no pet.)……………………….17,18,25

*Tenet Healthcare Ltd. v. Cooper,*
   960 S.W.2d 386, (Tex. App.-Houston [14th Dist.] 1998,
   pet. dism'd w.o.j.)…………………………………………………………...7

**Statutes:**

Tex. Civ. Prac. & Rem. Code §171.022………………………………………..33

## STATEMENT ON ORAL ARGUMENT

Appellee believes oral argument is necessary in this case. The arbitration agreement in question and the parties seeking to invoke the agreement make this case unique. This is not a typical case where certain parties negotiate and sign a contract containing an arbitration agreement, and then one of the parties compels the other party or the other party's officer(s) or agent(s) to arbitrate a dispute arising from the contract. Instead, here, the arbitration agreement in question is a company-wide agreement between the company and its volunteers; and certain volunteers are attempting to compel another volunteer to arbitrate his tort claims against them. The Court's decision is this case could be detrimental to Texas' volunteers and employees and also make arbitration agreements easier to enforce than other contracts. Oral argument would assist the Court in understanding the facts, analyzing the applicable legal issues in the context of those facts and ultimately deciding the case.

# ISSUES PRESENTED

## Issue One

Whether there is a valid and enforceable arbitration agreement?

A.      Whether Appellant AAU's promise to arbitrate was illusory given that the arbitration agreement does not contain a "savings clause" requiring notice of modifications or termination and requiring that AAU can amend or terminate the agreement prospectively only?

B.      Whether there is a valid arbitration agreement between AAU and Appellee given that Appellee is a non-signatory in his individual capacity and he did not agree to arbitrate this dispute.

C.      Whether, under agency principles and/or the doctrine of equitable estoppel, Appellants Paul Campbell, Rod Seaford, and Charles Oliver can seek enforcement of an   arbitration agreement contained in a contract to which they were not signatories?

> 1.      Whether Appellants Paul Campbell, Rod Seaford, and Charles Oliver can,   under agency theory, seek enforcement of an arbitration agreement between AAU and Appellee, given that the contract containing the arbitration agreement expressly provides that they are not agents of AAU; the claims asserted against them are substantively against them, not the AAU; and Appellee is not, in his individual capacity, a signatory to the arbitration agreement?
>
> 2.      Whether Appellants Paul Campbell, Rod Seaford, and Charles Oliver can, under the doctrine of equitable estoppel, seek enforcement of an arbitration agreement between AAU and Appellee, given that Appellee's claims arise from general obligations imposed by tort law and Appellee is not seeking, through his claims, to derive a direct benefit from the contract containing the arbitration provision?

## Issue Two

Whether Appellee's claims against Appellants are outside the scope of the arbitration agreement and arise from general obligations imposed by tort law given that Appellee's clams are for negligence, intentional infliction of emotional distress, and defamation based on Appellants' act of publicly removing Appellee from a track-meet and publicly accusing him of sexual assault without any investigation or purposeful inquiry into the matter?

## Issue Three

Whether the arbitration agreement in question is unconscionable given that the agreement is illusory as the promise to arbitrate was not mutual, the agreement provides insufficient remedies as it prohibits an award of punitive or exemplary damages, and the costs imposed by the arbitration agreement are excessive and effectively prevent Appellee from asserting his rights in an arbitration proceeding?

# STATEMENT OF FACTS

Amateur Athletic Union of the United States, Inc. ("AAU") is a non-profit volunteer sports organization. (CR: 3). At all times relevant, Paul Campbell was a volunteer Junior Olympic Event Director for AAU. (CR: 3). At all times relevant, Charles Oliver was a volunteer Meet Director for AAU. (CR: 3). At all times relevant, Rod Seaford was a volunteer Chair of the AAU's National Board of Review. (CR: 3).

In August 2012, AAU was holding a track-meet in Houston, Texas. Campbell and Oliver were in attendance and acting in the course and scope of their respective AAU roles. (CR: 3). Bray, a 30-year volunteer for AAU, including national, regional, and district volunteer services, was working the event. (CR: 3). Bray's job assignment was with the Jury of Appeals, which was tasked with making final decisions on any protests at the track-meet. (CR: 3).

On or about August 03, 2012, Bray was sitting in the protest/media area having a discussion with a Mr. Marv Allen when an unidentified woman squeezed her way in between where Mr. Allen and Bray were seated. (CR: 3). The unidentified woman bumped Bray's knee and almost stepped on his foot; and as she did so, Bray raised his arm to prevent injury and through no fault of his own made contact with the woman's body. (CR: 3). Several people were in the room

1

when this occurred. (CR: 3). The woman, later identified to be Louis Buckner, had no business being in the protest/media room, and did not belong in the room. (CR: 3).

Oliver told the woman to contact the police department and file a charge. Moments after the incident, Campbell, in front of approximately 10 people, including other AAU volunteers, several police officers, and certain media personality, stated that Bray was being charged with sexual assault. (CR: 3). Campbell further stated in front of said persons that Bray's AAU membership was immediately terminated, that Bray was no longer affiliated with the AAU, and that Bray would receive removal procedures in the mail. (CR: 3-4). Bray requested that Campbell speak with any one or all of the several persons present in the room when the incident occurred to get the facts of the incident, but Campbell refused to accept any statements from those persons. (CR: 4). Campbell and Oliver coerced Mr. Marv Allen to make false statements against Bray, statements which Mr. Allen later recanted. (CR: 4).

Bray was escorted from the premises by police officers. (CR: 4). As he was being escorted out by police officers, Bray noticed that Oliver was standing nearby with a smirk on his face and that Campbell gave Oliver a nod. (CR: 4). Campbell was heard telling Charles that "we finally got him". (CR: 4).

Bray was charged with the criminal offense of "assault by contact". The charge was dismissed. (CR: 4).

Bray submitted written complaints against Campbell and Oliver to the AAU National Board of Review ("Board"). (CR: 4). The Board, chaired by Defendant Rod Seaford, failed to exercise its powers and investigate Bray's claims, and dismissed Bray's claims. (CR: 4). The Board stated that Bray "declined to participate", despite the fact that Bray never received any documentation requesting participation. (CR: 4).

Bray appealed the Board's dismissal to the AAU National Board of Appeals. Over eleven (11) months later on July 24, 2013, the Board of Appeals sustained the decision of the Board of Review. (CR: 4).

As a result of Campbell's, Oliver's, and Seaford's acts and/or omissions, Bray's character, integrity, reputation, and livelihood, including his 30 years of dedicated and decorated service to the AAU, have been damaged. (CR: 5). Bray received numerous phone calls from AAU associates inquiring if he was guilty of sexual assault. (CR: 5). Bray ran for the elected position of National Second Vice-President of the AAU and received the lowest amount of votes. (CR: 5). Bray also suffered physical injuries and mental anguish because of Campbell's, Oliver's, and Seaford's acts and/or omissions. (CR: 5).

## SUMMARY OF THE ARGUMENT

The trial court did not err in denying Appellants' motion to compel arbitration because Appellants did not establish that the arbitration agreement in question is a valid and enforceable agreement. The arbitration agreement is not valid and enforceable. The agreement is illusory because Appellant AAU had the unilateral and unrestricted right to modify or terminate the arbitration agreement without notice to Appellee and without limiting modifications or termination to operate prospectively only. There was, and is, no mutual agreement to arbitrate. Appellee did not sign the arbitration agreement in his individual capacity and did not agree to arbitrate this dispute – a dispute arising from certain AAU members' defamation of Plaintiff, for which AAU may be liable under the theory of respondeat superior.

Appellants Paul Campbell, Rod Seaford, and Charles Oliver cannot compel arbitration under the alleged arbitration agreement between AAU and Appellee based on agency law. The contract containing the arbitration agreement expressly provides that they are not agents of AAU. Appellee's claims against them are tort claims that are substantively against them, not the AAU. And Appellee is not a signatory to the arbitration agreement in his individual capacity.

Appellants Paul Campbell, Rod Seaford, and Charles Oliver cannot compel

4

arbitration under the alleged arbitration agreement between AAU and Appellee based on equitable estoppel. Appellee's claims arise from general obligations imposed by tort law. Appellee is not seeking, through his claims, to derive a direct benefit from the contract containing the arbitration provision.

Appellee's claims are outside the scope of the arbitration agreement and arise from general obligations imposed by tort law.

The arbitration agreement is unconscionable. The promise to arbitrate was not mutual, the agreement provides insufficient remedies, and the costs imposed by the arbitration agreement effectively prevent Appellee from asserting his rights in an arbitration proceeding.

## STANDARD OF REVIEW

In an interlocutory appeal from an order denying a motion to compel arbitration, the reviewing court applies an abuse of discretion standard. *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 85 (Tex. App.-Houston [1st Dist.] 2012, pet. dism'd) (explaining standards of review for arbitration appeals). The reviewing court defers to the trial court's factual determinations and reviews questions of law de novo. *Id.*

While a strong presumption favoring arbitration exists, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). In deciding whether a party has met its initial burden, the reviewing court does not resolve doubts or indulge a presumption in favor of arbitration. *Id.* Rather, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Id.*

When, as in the instant case, no findings of fact or conclusions of law were filed, the reviewing court must uphold the trial court's decision if there is sufficient evidence to support it on any legal theory asserted. *In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex. 1984) (per curiam) (citing *Lassiter v. Bliss*, 559 S.W.2d 353, 356 (Tex. 1977)).

**I.      The trial court did not err in denying Appellants' motion to compel arbitration because the arbitration agreement is not valid and enforceable.[1]**

> **A. The arbitration agreement is not valid because AAU's promise to arbitrate is illusory given that the arbitration agreement does not contain a "savings clause" requiring notice of modifications or termination and requiring that AAU can amend or terminate the agreement  prospectively only.**

"A contract must be based upon a valid consideration or mutuality of obligation." *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App.-Corpus Christi 2003, orig. proceeding).  "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract." *Id.*   If one party to the agreement can avoid its promise to arbitrate by amending the provisions or terminating it altogether, the agreement is illusory and unenforceable.  *Id.* at 646 (concluding agreement was illusory because it contained provision giving employer the ability to modify or delete provisions as the employer deemed appropriate, with or without prior notification to employees); *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (citing *In re Halliburton Co.,* 80 S.W.3d 566, 570 (Tex. 2002)); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 386–88 (Tex. App.-Houston [14th Dist.] 1998, pet.

---

[1]A party seeking to compel arbitration under the FAA must establish: (1) the existence of a valid, enforceable arbitration agreement, and (2) that the claims at issue fall within the agreement's scope. *In re FirstMerit Bank*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding).

dism'd w.o.j.) (holding arbitration agreement contained in employee handbook was not supported by consideration where the employer "reserve[ed] the right to amend, supplement, or rescind any provisions of the handbook as it deem[ed] appropriate in its sole and absolute discretion"); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d at 230 n.2 (noting most courts have found illusory any contract allowing one party to unilaterally avoid arbitration).

The Texas Supreme Court, in *Halliburton*, first addressed the argument that an arbitration agreement was illusory. *In re Halliburton Co.,* 80 S.W.3d 566, 568 (Tex. 2002); *see also Nabors Drilling USA, L.P., v. Pena*, 385 S.W.3d 103 (Tex. App.-San Antonio 2012, pet. denied) (discussing *Halliburton* and its progeny). In *Halliburton*, the employer had an alternative dispute resolution program that required both it and its employees to submit all employment-related disputes to arbitration. *Id.* at 568. The terms of the arbitration agreement included the employer's right to modify or discontinue the program. *Id.* at 569–70. The terms required the employer to give its employees notice of changes to the agreement. *Id.* The terms made any amendments apply only prospectively. *Id.* The court held that the agreement was not illusory because it contained a savings clause that required notice of any modification or termination and any amendments to the agreement would apply prospectively only. *Id.* at 569–70. The court held that the

8

mutual promises to submit employment disputes to arbitration constituted sufficient consideration because both parties were bound to the promises to arbitrate. *Id.* at 569. Thus, because the employer could not avoid its promise to arbitrate by amending the provision or terminating it altogether, the court upheld the agreement. *Id. at 570.*

Since *Halliburton,* the Texas Supreme Court has consistently held that when an arbitration agreement contains a "savings clause" that requires notice to employees and makes any modification or termination operate prospectively only, it is not an illusory agreement. *Nabors Drilling*, 385 S.W.3d at 107 (citing *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding) and *In re Odyssey Healthcare, Inc.*, 310 at 424).

In *C&H News Co.*, the court concluded that the arbitration agreement in question was illusory and unenforceable. *In re C & H News Co.*, 133 S.W.3d at 647. In *C&H News Co.*, the arbitration agreement incorporated, by reference, the employee handbook. *Id.* at 646. The handbook provided that the content therein may be "changed, modified, deleted or amended from time to time as deem[ed] appropriate [by the employer], with or without prior notification to employees." *Id.* The court concluded that the arbitration agreement was illusory because the employer reserved the right to unilaterally amend the types of claims covered by

the agreement. *Id.* at 647. In other words, the court found the arbitration agreement illusory because there was no savings clause to make the promise to arbitrate mutual. *See id.* The court held that the trial court did not abuse its discretion in refusing to compel the employee to arbitrate. *Id.*

Here, AAU has the unilateral and unrestricted right to amend or terminate the arbitration agreement and avoid its promise to arbitrate. Unlike *Halliburton*, the arbitration agreement contained in the AAU National Policies has no provision requiring AAU to amend or terminate prospectively only. (CR: 41-80). The AAU National Policies does not require notice to employees/volunteers of any modification or termination of the arbitration agreement. (CR: 41-80). As it stands now, the arbitration agreement bars recovery of exemplary or punitive damages. (CR: 42). As it stands now, the arbitration agreement limits the statute of limitations to bring a claim to one year. (CR: 42). AAU could have and can at any time unilaterally change these and other provisions, or add additional provisions. AAU could have and can modify or eliminate other legal rights. AAU could have and can unilaterally change the arbitration venue to another county, city, or even state. AAU could have and can make only claims brought against it subject to arbitration. AAU could have and can eliminate the agreement altogether and pursue judicial action if it so chooses. AAU can pick and choose the claims it

10

wants to arbitrate. *See In re C & H News Co.*, 133 S.W.3d at 647 (finding arbitration agreement illusory and thus invalid where the employer could, among other things, "pick and choose" the claims it wanted to arbitrate). AAU can add to, subtract from, modify, or amend the agreement in many other ways if it so chooses. In fact, AAU has amended the arbitration clause twice, once in October 2006 and then in March 2009. (CR: 42). And, in October of 2007, AAU added a provision denying participation in the AAU for members who file litigation rather than arbitration, despite the issue of the invalidity, unenforceability, and unilateral nature of the arbitration agreement. (CR: 43). AAU's amendments and addition to the National Policies were done absent any notice or prospective-only requirements. What is to stop AAU from changing the rules in the middle of arbitration if the Court decides in favor of Appellants? *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir.1999) (arbitration agreement unenforceable in part because Hooters reserved the right to modify the rules without notice and "[n]othing in the rules even prohibit[ed] Hooters from changing the rules in the middle of an arbitration proceeding.").

Without a savings clause to make the promise to arbitrate mutual, AAU's "agreement" to arbitrate is illusory. The trial court did not err in denying Appellants' motion to compel arbitration.

11

**B. There is no valid arbitration agreement between AAU and Appellee because Appellee is a non-signatory in his individual capacity and he did not agree to arbitrate this dispute.**

Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 738 (Tex. 2005). Although the FAA does not expressly require the agreement to be signed by the parties, a party seeking to enforce a purported arbitration agreement must establish that the parties agreed to arbitrate the dispute. *In re Big 8 Food Stores*, 166 S.W.3d 869, 876 (Tex. App.—El Paso 2005, orig. proceeding).

Here, Appellee signed two documents in the record and before this Court. One of the documents states that submission of the document binds Officers to the AAU Code, and the other document states that submission binds the South Texas District to the AAU Code. (CR: 81-86). But, Appellee signed the documents only in his capacity as Governor of the South District. There is no document in the record and before this Court where Appellee has signed in his individual capacity and/or agreed to arbitrate in his individual capacity. And AAU has not established that Appellee agreed to arbitrate this dispute – a dispute arising from certain AAU members' defamation of Plaintiff, for which AAU may be liable under the theory of respondeat superior. The trial court did not err in denying Appellants' motion

12

to compel arbitration.

**C. Appellants Paul Campbell, Rod Seaford, and Charles Oliver cannot compel arbitration based on agency law or equitable estoppel principles.**

Texas courts have recognized six theories arising out of common principles of contract and agency law that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 739. Here, Appellants assert that they can compel arbitration under the theories of agency and equitable estoppel. Each of these two theories, neither of which requires arbitration in this case, are discussed separately below.

**1. Appellants Paul Campbell, Rod Seaford, and Charles Oliver cannot compel arbitration based on agency given that the contract containing the arbitration agreement expressly provides that they are not agents of AAU; the claims asserted against them are substantively against them, not the AAU; and Appellee is not, in his individual capacity, a signatory to the arbitration agreement.**

Because of the arbitration agreement in question and the parties involved in this case, the agency issue before the Court is unique and important. This is not a typical case where certain parties negotiate and sign a contract containing an arbitration agreement, and then one of the parties compels the other party's officer(s) or agent(s) to arbitrate a dispute under or arising from the contract.

13

Instead, here, certain volunteers, by virtue of their membership as volunteers, each (allegedly) have an arbitration agreement with the corporation for which they are all volunteering; and then one of the volunteers compelled another volunteer to arbitrate a dispute that occurred while "on the clock" with the corporation. If the Court were to decided in favor of Appellants under this scenario, the Court's decision would be detrimental to Texas' volunteers and employees as they would be required to arbitrate any and all disputes, no matter how personal in nature, against their co-volunteers/employees if the company/employer has an organizational-wide arbitration agreement. Arbitration agreements would become easier to enforce than other contracts, contrary to the FAA's purpose. As such, a summary of the relevant law is required.

Courts have held that plaintiffs who had signed arbitration agreements could be compelled to arbitrate their disputes with nonsignatory defendants. *In re Vesta Insurance Group, Inc.*, 192 S.W.3d 759 (Tex. 2006); *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding).

In *Vesta,* an insurance company and an independent agent agreed to arbitrate any dispute "under or with respect to" their contract. *Vesta,* 192 S.W.3d at 760. The insurance company terminated the contract, and the independent agent was replaced with another agent. *Id.* at 761. Instead of litigating or arbitrating the

14

matter against the other signatory to the arbitration agreement, i.e. the insurance company, the independent agent filed a tortious interference claim against the non-signatory agent that replaced him, two of said agent's affiliates, and the insurance company's parent company and two of its corporate officers. *Id.* The court, noting the rule that "nonparties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law", held that "tortious interference claims between a signatory to an arbitration agreement and agents or affiliates of the other signatory arise more from the contract than general law, and thus fall on the arbitration side of the scale." *Id.* at 761-62. The court concluded that the non-signatory agents, officers, and affiliates could invoke the arbitration clause because the independent agent could not avoid his agreement to arbitrate by bringing a tortious interference claim against them instead of a contract claim against the other signatory to the contract. *See id.* at 762-63. The court reasoned that (1) every contract claim against a corporation could be recast as a tortious interference claim against its agents, making it easier to avoid arbitration clauses than other clauses of a contract, contrary to the FAA's purpose; and (2) requiring arbitration of such claims complies with the rule that the courts "look first to whether the parties agreed to arbitrate a dispute." *Id.* at 762.

15

In *Kaplan,* students of a vocational college, a subsidiary of Kaplan Higher Education Corporation ("Kaplan"), agreed to arbitrate any dispute "arising from or relating to" their enrollment agreement. *Kaplan,* 235 S.W.3d at 208. The students' enrollment agreement was signed by the students, the college, and the president of the college. *Id.* Kaplan and the admissions director were not signatories to the agreement. *Id.* The students filed a lawsuit against Kaplan, the college, and the college's president and admissions director. *Id.* at 208. The students' claims, although alleged as negligence, negligence per se, violations of the DTPA, and negligent misrepresentation, were substantively a claim for fraudulent inducement. *Id.* The defendants moved for arbitration. *Id.* The students, hoping to avoid arbitration, dismissed their claims against the two signatories, leaving only their claims against the two non-signatories. *See id.* The court held that the two non-signatory agents could invoke the arbitration agreement. *Id.* at 209. The court, citing *Vesta,* stated that "one cannot avoid [arbitration] by recasting a contract dispute as a tortious interference claim against an owner, officer, agent, or affiliate of the other [party to the contract]." *Id.* Like the court in *Vesta,* the court reasoned that (1) "almost every contract claims against a corporation could be recast as fraudulent-inducement claims against the agents or employees who took part in negotiating the contract; and (2) because "a contracting party generally cannot

16

avoid unfavorable clauses by suing the other party's agents, this rule is necessary 'to place arbitration agreements on equal footing with other contracts.'" *Id.* (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293, (2002)). The court went on to state:

> We emphasize again today that arbitration clauses do not automatically cover all corporate agents or affiliates. Like other contracts, arbitration agreements are enforced according to their terms and according to the intentions of the parties. Thus, for example, owners may not be able to invoke a subsidiary's arbitration clause when they act on their own behalf rather than for their subsidiary. But when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings.

*Id.* at 210 (internal citations and quotations omitted).

In *Roe*, the court explained that the decision in *Vesta* (and by implication *Kaplan*) was based on principles of equitable estoppel. *Roe v. Ladymon*, 318 S.W.3d 502, 520 (Tex. App.-Dallas 2010, no pet.). The court explained that the proposition for which *Vesta* (and *Kaplan*) stand for—that "a signatory plaintiff cannot avoid its agreement to arbitrate disputes simply by bringing claims against the [nonsignatory] officers [or] agents of the other signatory to the contract"—is based on estoppel principles because it essentially involves holding the plaintiff to his agreement to arbitrate. *Id.*; *DK Joint Venture 1 v. Weyand,* 649 F.3d 310, 315

17

(5th Cir.2011).  The court stated that "[t]he *Vesta* court recognized that estoppel principles may require a nonparty to arbitrate if it seeks through its claim to obtain a direct benefit from the contract containing the arbitration clause." *Roe,* 318 S.W.3d at 520 (citing *Vesta,* 192 S.W.3d at 762-63).

In *Roe*, a homeowner pursued arbitration against a contractor business and a partner of the business.  *Id.* at 507-08.  The partner signed the contract not in his individual capacity but rather in his capacity as a partner.  *Id.* at 507.  The homeowner, citing *Vesta*, argued that because the partner was an agent or representative of the contractor business whom entered into the arbitration agreement, and "agents and representatives of parties to contracts containing arbitration clauses are properly bound to arbitrate with the entity that signed the agreement," arbitration was therefore proper.  *Id.* at 520.  The court disagreed.  *Id.* The court explained that "by signing the contract as an agent for a disclosed principal, the partner did not become personally bound by the terms of that contract, including the arbitration clause."  *Id.* at 521.  The court, recognizing that *Vesta* was based on estoppel principles and involved a signatory resisting arbitration, held that it matters whether the party resisting arbitration is a signatory or non-signatory.  *See id.* at 520-21; *DK Joint Venture,* 649 F.3d at 215.  Thus, since the party resisting arbitration, i.e. the partner, did not sign the agreement to

18

arbitrate in his individual capacity, the court found that there was no "basis to 'estop' him from refusing to arbitrate because he never agreed to arbitrate." *Id.* at 520–21.

In *DK Joint Venture*, the plaintiffs pursued arbitration against certain corporations and the CEO and CFO who controlled them. *DK Joint Venture,* 649 F.3d at 313. The plaintiffs alleged that the defendants had committed fraud, breach of contract, breaches of fiduciary duty, and other wrongs in order to induce the plaintiffs to invest money in a purported oil and gas venture. *Id.* The plaintiffs relied on arbitration provisions that were contained in contracts between the plaintiffs and the defendant corporations. *Id.* The court stated that "the fact that the defendant corporations entered into the contracts containing the arbitration agreement did not cause their agents, the CEO and CFO, who acted only as officers on behalf of the corporations, to be personally bound by those agreements. *Id.* at 314. The court held that because the CEO and CFO, i.e. the parties resisting arbitration, were not signatories in their individual capacity, they never personally agreed to arbitrate and were not bound by the arbitration agreements. *Id.* at 317.

Here, Appellants Paul Campbell, Rod Seaford, and Charles Oliver (hereinafter the "Individual Appellants") admit they are non-signatories to the arbitration agreement. (Appellants' Brief at pg. 5). There is no evidence in the

record and before this Court showing otherwise. As such, the Individual Appellants contend that they are agents of the AAU and can therefore invoke the AAU's arbitration agreement and compel Appellee to arbitrate. However, to start with, the Individual Appellants are not AAU's agents. The AAU National Policies, which contain the arbitration agreement, expressly states that the Individual Appellants are not AAU's agents:

> **Agency.** Membership in the AAU does not create an agency relationship . . . . Members shall not represent themselves to be agents of the AAU without specific written authorization from the National AAU. Acts of an AAU member not related to a sanctioned AAU event are not authorized by the AAU and therefore no agency relationship is created thereby.

(CR: 45) (emphasis in original).

Because the AAU National Policies expressly provides that its members are not its agents, the Individual Appellants cannot invoke the (alleged) arbitration agreement between AAU and Appellee. The Individual Appellants cannot claim the direct benefit of arbitration as agents of AAU when they have expressly agreed that they are not agents of AAU. The AAU National Policies also includes a Defense Policy, which provides that it is AAU's policy "to defend the National and District Officers, members and volunteers, or other appropriate persons from civil actions arising from their authorized activity on behalf of the AAU." (CR: 52). AAU and

20

the Individual Appellants are currently represented by the same counsel, presumably under this policy. To the extent AAU is seeking arbitration on behalf of the Individual Appellants, presumably to fit its joint legal representation and the advantages that come with such an arrangement, AAU should be estopped. AAU should not be allowed to disclaim its members as agents and at the same time assert agency law for those same members to AAU's benefit.

The Individual Appellants rely on *Vesta* and *Kaplan* for their contention that they, as alleged agents of the AAU, can compel Appellee to arbitrate. Neither *Vesta* nor *Kaplan* requires that this case be arbitrated. Both *Vesta* and *Kaplan* involved plaintiffs trying to avoid their respective agreement to arbitrate by recasting claims that were truly and substantively contract claims against the other signatory to the contract as tortious interference and fraudulent-inducement claims against non-signatory officers or agents. The plaintiffs were equitably estopped from doing such. Here, Appellee is not recasting claims against the AAU as claims against the Individual Appellants. Appellee's tort claims are unrelated to the AAU National Policies and are substantively against the Individual Appellants. (CR: 1-9). Appellee's claims can be summarized as follows:

**Negligence:**

- Appellants Campbell and Oliver breached their duty of care and were negligent by (1) unilaterally and publicly removing Plaintiff

21

from the track-meet, and (2) accusing Plaintiff of sexual assault without any investigation or purposeful inquiry. (CR: 5).

**Intentional Infliction of Emotional Distress:**

- Appellants Campbell and Oliver intentionally or recklessly accused Plaintiff of sexual assault and publicly stripped Plaintiff of his AAU membership and removed him from the track-meet. (CR: 6).
- Appellant Seaford intentionally or recklessly damaged Plaintiff's reputation by dismissing Plaintiff's complaint made to the AAU Board without any investigation, thus perpetuating the damage to Plaintiff's reputation. (CR: 6).

**Defamation:**

- Appellant Campbell made false and defamatory statements regarding Appellee, including statements falsely charging Appellee with the commission of a crime, i.e. sexual assault. (CR: 6).

**Aiding & Abetting**

- Appellant Campbell's actions accomplished a tortious result. Appellants Oliver and Seaford knew of Campbell's tortious conduct and assisted, encouraged, and/or participated in accomplishing the tortious result. (CR: 7)

**Conspiracy:**

- Appellants Campbell, Seaford, and Oliver committed conspiracy. They conspired to defame Appellee and remove him from the AAU and/or to harm his status and elected position in the AAU. (CR: 7).

Unlike *Vesta* and *Kaplan*, there is no basis to estop Appellee from refusing

22

to arbitrate. Appellee's claims are not claims against the AAU recast as claims against the Individual Appellants. (*See* CR: 1-9). Appellee is not seeking through his claims to obtain a direct benefit from the contract containing the arbitration clause. (*See* CR: 1-9). Appellee is not trying to avoid arbitration by alleging that the non-signatory Individual Appellants were "pulling the strings" of a contract between Appellee and AAU. (*See* CR: 1-9). Appellee's claims are substantively against the Individual Appellants. (*See* CR: 1-9). Appellee's right to recover and his damages do not depend on the AAU National Policies. (*See* CR: 1-9). Appellee included AAU in the lawsuit based on the theory of respondeat superior, and is not suing AAU based on agency law for acts allegedly done in an agency capacity. (CR: 5-7). Although Appellee, in his Original Petition, very briefly mentions that Appellant Charles Oliver has, in the past, violated the AAU Athletic Handbook, such is not the basis or substance of Appellee's claims. (CR: 4-5). It is clear from Appellee's Original Petition that the claims are independent from the AAU Athletic Handbook. (CR: 1-9). More notably, this short, two-sentence paragraph is the only mention of the AAU Athletic Handbook. (CR: 1-9). And even more notably, this is not a reference to the AAU National Policies which contains the arbitration agreement in question. The only arguable reference to the AAU National Policies is Appellee's reference to the AAU Board of Review and

23

Board of Appeals, which are contained in the Judicial Procedures and Rules of the AAU National Policies. (CR: 4; 64-65). However, the references are simply an explanation that Appellee exhausted the administrative procedures of the AAU prior to filing suit. (CR: 4). Appellee is not relying on the Judicial Procedures and Rules of the AAU National Policies to support his tort claims. (*See* CR: 1-9).

Furthermore, like the parties resisting arbitration in *Roe* and *DK Joint Venture,* who were not signatories in their individual capacity and thus were not bound by the arbitration agreements, Appellee is a non-signatory in his individual capacity and is not bound by the arbitration agreement. There are two documents in evidence and before the Court with Appellee's signature: a Governance of Districts form and a District Request and Consent form. (CR: 81 and 86). While the first document states that submission of the document binds Officers to the AAU Code, Appellee signed the documents only in his capacity as Governor of the South Texas District. (CR: 81). The second document, also signed by Appellee only in his capacity as Governor, states that submission of the document binds the South Texas District to the AAU Code. (CR: 86). There is no document in evidence and before this Court where Appellee has signed in his individual capacity and/or agreed to arbitrate claims pursued in his individual capacity against the Individual Appellants. *See Covington* v. *Aban Offshore Ltd.*, 650 F.3d 556,

560 (5th Cir. 2011) ("Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.") (quoting *Bel–Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir.1999)).

Moreover, the arbitration agreement here is distinguishable from all the aforementioned cases, re-enforcing Appellee's right to refuse to arbitrate. Here, Appellee is not a signatory, in his individual or official capacity, to a contract for which the Individual Appellants are parties or agents. There are essentially four (alleged) different contracts or volunteer membership agreements—one between AAU and Appellee, one between AAU and Appellant Campbell, one between AAU and Appellant Oliver, and one between AAU and Appellant Seaford. In essence, the Individual Appellants are attempting to compel their co-volunteer, Appellee, to arbitrate under a contract Appellee has with the AAU because the Individual Appellants also have a contract with the AAU. Simply stated, a volunteer or employee cannot force a co-volunteer or co-employee to arbitrate a matter simply because they each have an arbitration agreement with the same employer. Such would go against ordinary state law contract principles. *See Roe,* 318 S.W.3d at 512-513 ("[W]hen deciding whether the parties agreed to arbitrate a certain matter, courts should apply ordinary state-law principles governing the formation of contracts . . . ."). If arbitration were to be forced under such

25

circumstances, Texas employees and volunteers would be required to arbitrate any and all disputes, no matter how personal in nature, against their co-volunteers if the organization has a company-wide arbitration agreement between it and its volunteers. Arbitration agreements would become easier to enforce than other contracts, contrary to the FAA's purpose. *See Vesta,* 192 S.W.3d at 762 ("'The FAA directs courts to place arbitration agreements on equal footing with other contracts.'" "Accordingly, we must avoid any rule that makes it easier to avoid arbitration clauses than other clauses of a contract.") (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740-41 (Tex. 2005) (holding that a first-tier subcontractor could not compel the second-tier subcontractor to arbitrate based on arbitration agreement contained in the contract between the first-tier subcontractor and general contractor, despite the fact that the work performed by the second-tier subcontractor was inherently related to and defined by the contract, because "if [such] relationship were a sufficient basis for binding a non-signatory subcontractor, arbitration agreements would become easier to enforce than other contracts, counter to the FAA's purpose."). Moreover, allowing volunteers to invoke their organization's arbitration agreement against their co-volunteers would allow forum shopping.

Because Appellee is not recasting a contract claim against AAU as a claim against the Individual Appellants, there is no basis to estop Appellee from refusing to arbitrate. Because Appellee is not a signatory in his individual capacity, he never personally agreed to arbitrate and is not bound by the arbitration agreement. The Individual Appellants are not parties or agents to the alleged arbitration agreement between AAU and Appellee. In sum, as non-signatories, Appellants have failed to support an agency theory which could force Appellee to arbitrate in the absence of an agreement. The trial court did not abuse its discretion in denying Appellants' motion to compel arbitration.

**2. Appellants Paul Campbell, Rod Seaford, and Charles Oliver cannot compel arbitration based on equitable estoppel given that Appellee's claims arise from general obligations imposed by tort law and Appellee is not seeking, through his claims, to derive a direct benefit from the contract containing the arbitration provision.**

The doctrine of equitable estoppel allows a nonsignatory party to compel arbitration in two situations. *Merrill Lynch Trust Co. FSB v. Alaniz*, 159 S.W.3d 162, 170 (Tex. App.—Corpus Christi 2004) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000). "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, application of equitable estoppels is warranted when the

27

signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* Only the first situation is relevant and at issue here.

The Texas Supreme Court has held that a person who seeks by his claim to derive a direct benefit from the contract containing the arbitration provision may be equitably estopped from refusing arbitration. *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 305 (Tex. 2006) (*citing In re Vesta Insurance Group, Inc.,* 192 S.W.3d 759, 761–62 (Tex. 2006)). "[A]lthough a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration provision." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741. "Instead, a non-signatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *Id.* Equitable estoppel allows a non-signatory to compel arbitration when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir.2000).[2] Nonparties generally must arbitrate

---

[2] "Although state law determines the validity of an arbitration agreement, courts have applied both federal and state law to determine the related, but distinct, issue of whether non-signatory

28

claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law. *Vesta,* 192 S.W.3d at 761. "When a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims. *Meyer v. WMCO–GP, LLC*, 211 S.W.3d at 307.

In *FirstMerit Bank,* the non-signatory plaintiffs sued the signatory defendant for breach of contract and breach of warranty, among other claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 752–53, 755 (Tex. 2001). By bringing the breach-of-contract and breach-of-warranty claims, the plaintiffs sought benefits that stemmed directly from the terms of the contract. The court concluded that because the non-signatory plaintiffs sought to enforce the contract, they "subjected themselves to the contract's terms, including the Arbitration Addendum." *Id.* at 756.

In *Kellogg*, the non-signatory plaintiff was a second-tier subcontractor. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 736. The plaintiff sued the signatory

---

plaintiffs should be compelled to arbitrate their claims." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738. The FAA does not specify whether state or federal law governs the determination of whether a non-signatory can compel arbitration or be compelled to arbitrate, and the United States Supreme Court has not directly addressed the issue. *Id.* In *Labatt*, the court stated that until the U.S. Supreme Court addresses this issue it will apply state substantive law and attempt to keep it consistent with federal law. *In re Labatt Food Serv.*, 279 S.W.3d 640, 643 (Tex. 2009). In *Kellogg* the court noted that it was "mindful of the extensive body of federal precedent that has explored the extent to which non-signatories can be compelled to arbitrate" and it "recognize[d] that it is important for federal and state law to be as consistent as possible in this area, because federal and state courts have concurrent jurisdiction to enforce the FAA." *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 739.

general contractor for breach of contract, and in the alternative, the signatory first-tier subcontractor for quantum meruit. *Id.* The contract between the general contractor and the first-tier subcontractor contained the arbitration clause in question. *Id.* Under its estoppel theory, the first-tier subcontractor sought to compel the plaintiff to arbitrate its claims in the ongoing arbitration between the first-tier subcontractor and general contractor. *Id.* The first-tier subcontractor contended that the non-signatory second-tier subcontractor's labor and services were linked inextricably to the contract containing the arbitration agreement. *Id.* at 740. Although the court agreed that the work performed by the non-signatory second-tier subcontract was "at the contract's core and that, in performing the work, [the second-tier subcontractor] relied on the [first-tier] subcontract's specifications", the court held that the relationship did not bind the non-signatory to the arbitration provision. *Id.* at 740-41. The court held that "a non-signatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *Id.* at 741. The court reasoned that the work to be performed by the second-tier subcontractor will inherently be related to and defined by the contracts higher in the chain, and that "if this were a sufficient basis for binding a non-signatory subcontractor, arbitration agreements would become easier to enforce than other

30

contracts, counter to the FAA's purpose." *Id.* at 740.

Here, the factual allegations of Plaintiff's lawsuit center around general obligations of law, and the tort claims could stand on their own. (*See* CR: 1-9). The tort claims are based on allegations that the Individual Appellants publicly removed Appellee from the track-meet and publicly accused him of sexual assault without any investigation or purposeful inquiry into the matter. (CR: 1-9). Appellee is not a signatory in his individual capacity. (CR: 81 and 86). Appellee's claims do not rely on the terms of the AAU National Policies. (CR: 1-9). Appellee is not seeking, through his claims, to derive a direct benefit from the AAU National Policies. (CR: 1-9). Appellee's right to recover and his damages do not depend on the AAU National Policies. See more-detailed discussion *supra* Part I.C.1, pgs. 21-24.

Moreover, like *Kellog*, if Appelle's and the Individual Appellants' relationship as co-volunteers of the AAU was a sufficient basis for binding Appellee to arbitration for claims against the Individual Appellants, arbitration agreements would become easier to enforce than other contracts, counter to the FAA's purpose.

Thus, Appellants, as non-signatories, have failed to support an equitable estoppel theory which could force Appellee to arbitrate in the absence of a mutual

31

agreement. The trial court did not abuse its discretion in denying Appellants' motion to compel arbitration.

**II.    The trial court did not err in denying Appellants' motion to compel arbitration because Appellee's claims are outside the scope of the agreement and arise from general obligations imposed by tort law.**

A motion to compel arbitration should be denied when the dispute is outside the scope of the agreement to arbitrate. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754-55. To determine whether a claim falls within the scope of the agreement, courts must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995).

> Under both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading. Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law.

*In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex.2005)

An arbitration agreement includes a tort claim if the tort is so interwoven with the contract that it could not stand alone. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson*, 805 S.W.2d 38, 39 (Tex. App.—El Paso1991, no writ).

Here, the factual allegations of Plaintiff's lawsuit center around general obligations of law, and the tort claims could stand on their own. The substance of Appelle's claims shows that he is not seeking to obtain a direct benefit from the AAU National Polices. See discussion *supra* at I.C.1 pgs. 21-24. Appellee's claims are outside the scope of the agreement, and the trial court did not err in denying Appellants' motion to compel arbitration.

**III. The trial court did not err in denying Appellants' motion to compel arbitration because the agreement is unconscionable given that the promise to arbitrate was not mutual, the agreement provides insufficient remedies, and the costs imposed by the arbitration agreement effectively prevent Appellee from asserting his rights in an arbitration proceeding.[3]**

A court should deny a motion to compel arbitration when the arbitration agreement in the contract that is subject to arbitration was unconscionable at the time it was made. Tex. Civ. Prac. & Rem. Code §171.022; *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). Procedural unconscionability refers to the circumstances surrounding the actual making of the arbitration agreement and the bargaining process. *Id.* Substantive unconscionability refers to the fairness of the terms and conditions of the arbitration agreement itself. *Id.*

---

[3] To the extent Appellants rely on an argument that Appellee did not timely present evidence in the trial court to support his argument that the arbitration agreement in question is unconscionable, Appellants have waived any such argument as they did not object in the trial court, and such an issue is not before this Court. See Appellants' Brief at pg. 16.

Here, the arbitration agreement is procedurally unconscionable because the agreement was not something that Appellee negotiated, signed and entered into, but rather an agreement that allegedly automatically applies to him by virtue of his membership. Because the AAU can unilaterally amend the arbitration agreement, which it last did in 2009, the terms of the 2009 amended-agreement are the terms for which Appellee is allegedly bound. Thus, the arbitration agreement sought to be enforced was created unilaterally by AAU and without notice to Appellee.

The arbitration agreement is substantively unconscionable because the agreement gave AAU the unilateral and unrestricted right to amend or terminate the arbitration agreement. The agreement gave AAU the unilateral and unrestricted right to avoid its promise to arbitrate.

The arbitration agreement is further substantively unconscionable because the costs imposed by the arbitration agreement are excessive and effectively prevent Appellee from asserting his rights in an arbitration proceeding. *See In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 892-93 (Tex. 2010). The costs are excessive for the following reasons: (1) Appellee is unable to pay the arbitration fees and costs, (2) the actual amount of the fees compared to the amount of the underlying claim is excessive, and/or (3) the expected cost differential between arbitration and litigation is so substantial that Appellee is deterred from asserting

34

his rights in the arbitration proceeding. *See In re Olshan Found.*, 328 S.W.3d at 893-94; *see, e.g.*, *Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212, 215-16 (Tex. App.—San Antonio 2005, pet. denied).

If this lawsuit were to be arbitrated, the AAA's Commercial Rules would apply. (Compare CR: 41 with CR: 163). Under those rules, Appellee is required to pay a filing fee of $750.00 and a final fee of $800.00. (CR: 122 and 150). All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, will be borne equally by Appellee and Appellants, unless the arbitrator in the award assesses such expenses or any part thereof against Appellee or Appellants. (CR: 139). Appellee may be required to deposit his portion of such sums of money in advance of any hearings. (CR: 140). The arbitrator will serve at a rate between $200.00 and $500.00 per hour. (CR: 163). If compelled to arbitrate, Appellee will also incur miscellaneous expenses such as travel, hotel, rental car, food, gas, etc. of approximately $600.00. (CR: 165-168). In sum, with the filing fee of $750.00, the final fee of $800.00, just 40 service hours of the arbitrator (at an average rate of $350 and split between Appellee and Appellants), and miscellaneous expenses of $600.00, the cost for Appellee to arbitrate would be over $9,000.00. These costs would be a serious

financial burden on Appellee and would effectively prevent Appellee from asserting his rights in an arbitration proceeding. (CR: 110-111). These costs are also excessive when compared to Appellee's out-of-pocket medical expenses and other economic damages, which likewise total approximately $9,000.00. (See CR: 110-111). Moreover, the arbitration agreement purportedly allows Defendants to recover consequential damages that they would not otherwise be able to recover. (CR: 41). Litigation of this lawsuit, on the other hand, is of no cost to Plaintiff as he has a contingency fee arrangement and is not obligated to pay for litigation expenses unless a recovery is made on his behalf. (CR: 111). If required to arbitrate, Appellee would have to seek new counsel in Florida, which may involve an hourly-fee arrangement rather than a contingency-fee arrangement. All of this deters Plaintiff from making his claims and asserting his rights in arbitration. (CR: 110-111).

The arbitration agreement is further substantively unconscionable because AAU's promise to arbitrate is illusory. See discussion *supra* Part I.A.

Additionally, the arbitration agreement prohibits an award of punitive or exemplary damages, for which Plaintiff is seeking as part of his lawsuit. *See In re Poly-America L.P.*, 262 S.W.3d 337 (Tex. 2008) (finding that a prohibition of an award of punitive damages where such damages were available under the statutory

claim asserted was unconscionable; severing that clause from the arbitration agreement); *Hadnot v. Bay Ltd.*, 344 F.3d 474 (5th Cir. 2003) (affirming district court's decision to sever punitive damages prohibition in an employer-employee arbitration agreement). The arbitration agreement also limits the claims that can be brought in arbitration more than the claims that can be brought in court. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1175 (9th Cir. 2003) (finding that a one year contractual statute of limitations in an agreement to arbitrate employment disputes that deprived claimants of the benefits of the continuing violation doctrine was unconscionable); *Alexander v. Anthony Int'l. L.P.*, 341 F.3d 256 (3d Cir. 2003) (same for 30 day statute of limitations). To enforce this arbitration clause as written would deny Appellee certain rights.

Because the arbitration agreement is unconscionable, and Appellee met its burden to show such, the trial court did not err in denying Appellants' motion to compel arbitration.

## PRAYER

Appellants bore the initial burden of establishing before the trial court that they had the right to enforce the arbitration agreements contained in the AAU National Policies. The trial court did not err in determining that the arbitration agreement was invalid and unenforceable. The trial court properly held that the

37

facts of this case support denial of arbitration.

**WHEREFORE, PREMISES CONSIDERED**, Appellee respectfully prays that this Court affirm the ruling of the trial court with regard to the denial of the motion to compel arbitration. In the alternative only, if the Court were to find that the claims are arbitral as to one or more, but not all of the appellants, Appellee prays that this Court sever the case accordingly. Also in the alternative only, Appellee prays that this Court strike the unconscionable clauses. Appellee also prays for all costs and such further relief to which he may show himself entitled.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies this Appellee's Brief complies with the type volume limitations of Texas Rule of Appellate Procedure 9.4(i)(2)(B). The undersigned prepared the Appellee's Brief using Microsoft Word 2007 and is relying on that software's word-count function. Exclusive of the exempted portions listed in Texas Rule of Appellate Procedure 9.4(i)(2)(B), the Brief contains 8,439 words.

Respectfully submitted,

**GALOW & SMITH, P.C.**
1204 Nueces
Austin, Texas 78701
(512) 481-0200
(512) 481-0250 (FAX)

jerry@galowlaw.com
Justin@galowlaw.com
jolynn@galowlaw.com

By:_____/s/ Justin Studdard_____
**JERRY GALOW**
State Bar No. 07594400
**JUSTIN STUDDARD**
State Bar No. 24077158
**ATTORNEYS FOR APPELLEE**
**AUGUSTUS BRAY**

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of this document has been served on all parties on this the 24th day of June, 2015, via email as follows:

Lewin Plunkett                **Via Email: lplunkett@pg-law.com**
Dannick Villasenor-Hernandez  **Via Email: dhernandez@pg-law.com**
PLUNKETT & GRIESENBECK, INC.
1635 N.E. Looop 410, St., 900
San Antonio, Texas 78209
(210) 734-7092
(210) 734-0379 Facsimile
**ATTORNEYS FOR DEFENDANTS**
**AMATUER ATHLETIC UNION**
**OF THE UNITED STATES, INC.,**
**PAUL CAMPBELL, ROD SEAFORD,**
**AND CHARLES OLIVER**